**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED SEPTEMBER 17, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

No. 120484

ROBERT EDWARD HINE,

    Defendant-Appellee.

_____

PER CURIAM

I

The defendant was convicted by a jury of first-degree felony murder, MCL 750.316(b), and first-degree child abuse, MCL 750.136b. The defendant was sentenced to terms, respectively, of life without the possibility of parole and ten to fifteen years. The defendant appealed as of right. The Court of Appeals reversed the defendant's convictions because of the perceived error in admission of other acts evidence against the defendant and remanded the case to the

trial court.[1]  This Court vacated the judgment of the Court of Appeals and remanded the case to that Court for reconsideration in light of *People v Sabin (After Remand)*, 463 Mich 43; 614 NW2d 888 (2000).  463 Mich 926 (2000).  On remand, the Court of Appeals again reversed the defendant's convictions and remanded the case to the trial court.[2]

On application for leave to appeal by the prosecutor, we reverse the judgment of the Court of Appeals and remand to that Court for consideration of the remaining issues of the defendant that have not yet been addressed.  The Court of Appeals erred in its determination that evidence of defendant's assaultive behavior toward three women was inadmissible under *Sabin*.  We hold that the evidence was admissible to establish the common scheme, plan, or system of the defendant in perpetrating a particular type of physical assault.  From that evidence the jury could properly have inferred that the charged acts were committed, and were committed by the defendant.  *Sabin, supra* at 66-67.

---

[1] Unpublished opinion per curiam, issued February 25, 2000 (Docket No. 207358).  The Court did not address defendant's other issues, which concerned unsolicited testimony about other bad acts committed by the defendant, omission of an instruction on specific intent, and violation of double jeopardy principles in the imposition of sentences on both the felony murder and the predicate felony.

[2] Unpublished opinion per curiam, issued November 13, 2001 (Docket No 207358).

On November 7, 1996, paramedics were called to a home in Battle Creek, Michigan, because of a report that a child was choking. The paramedics found Caitlan McLaughlin, a two-and-a-half-year-old girl who was not breathing, had no pulse, and appeared to be dead. After communication with physicians at the nearby hospital emergency room, Caitlan was officially pronounced dead. An autopsy determined that the child had several internal injuries including a subdural hematoma, a healing tear of the liver, hemorrhage in the region of the pancreas, another area of bleeding in the colon (near the appendix), and a large amount of fluid in the abdomen. Caitlan had numerous circular bruises on her abdomen and a bruise across the bridge of her nose. The injuries were of varying ages, from less than half a dozen hours up to five to seven days old. The cause of death was multiple blunt force injuries. The pathologist opined that the aggregate of the injuries caused Caitlan's death, and that the death was not accidental.

The week before Caitlan died, defendant had been her sole care provider while her mother was at work. Defendant denied any wrongdoing in connection with Caitlan's death.

The defendant was charged with open murder, MCL 750.316, felony murder on the basis of perpetration or attempted perpetration of child abuse, MCL 750.316(1)(b), and first-

degree child abuse, MCL 750.136b. The prosecutor notified the defendant of her intent to introduce other acts evidence pursuant to MRE 404(b). The trial court held an evidentiary hearing at which the proposed other acts witnesses testified.[3] Three of the witnesses were former girlfriends of the defendant and included the child's mother. Although the prosecutor referred to alternate theories of admissibility under MRE 404(b),[4] the theory before us is proof of a common

---

[3] The prosecutor offered four witnesses, of whom three were allowed to testify at the trial. Only their testimony will be discussed. The prosecutor described the testimony that would be given by the pathologist, Laurence Simson, M.D., and an expert in child abuse, Stephen Guertin, M.D.

[4] MRE 404 states:

Character evidence not admissible to prove conduct; exceptions; other crimes

* * *
(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

(2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.

4

scheme, plan, or system.

One witness testified that she dated defendant in 1996, the year before Caitlan's death. She described incidents in which the defendant grabbed her arms, put his hands in her mouth, and stretched her lips. This resulted in bruises on her gums. The witness attributed the violence to the defendant's irritation with her. She also described other incidents involving being threatened with a metal folding chair and with having her eyes blackened.

Another witness testified that during the time she was involved with the defendant, she was assaulted by him at least once a week. Defendant "head-butted" her, a movement described as defendant hitting his forehead on the witness' nose. One incident caused bleeding from both her nostrils. The witness described being picked up and thrown down by the defendant. Although the defendant never punched her, the witness said the defendant would grab, throw, and shove her.

Another witness was Caitlan's mother. She described the beginning of her relationship with the defendant in late 1995 and their leasing of a residence together in the fall of 1996. She testified that the defendant would pin down her arms with his knees when he was angry, causing bruises on her arms. The

---

If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

5

defendant would push and shove her. Once, the defendant kneed her in her mouth, which caused her lips to become swollen and bruised. The defendant poked her in the forehead and chest with enough force that it hurt. Caitlan's mother gave the descriptive name of "fish-hook" to the maneuver described by the first witness in which the defendant put his fingers or hand inside her mouth and forcefully pulled. Caitlan's mother also described several head-butting incidents.

Additionally, the prosecutor summarized the evidence that would be presented by the forensic pathologist and the expert in child abuse.

The trial court ruled on the prosecutor's motion on the first day of trial. The court looked to this Court's decision in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), and relied upon its four-pronged analysis:

> In *VanderVliet, supra* at 74-75, we adopted the approach to other acts evidence enunciated by the United States Supreme Court in *Huddleston v United States,* 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988). That approach employs the evidentiary safeguards already present in the rules of evidence. First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a "'determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403.'" *VanderVliet, supra* at 75, quoting advisory committee notes to FRE 404(b). Finally, the trial

6

court, upon request, may provide a limiting instruction under MRE 105. [*Sabin*, *supra* at 55-56.]

The trial court held that the evidence was not being offered to show the defendant's propensity to commit the criminal act. Rather, the other acts evidence was offered to show defendant's scheme, intent, system, or plan in committing the acts and to show the lack of accident.[5] The court specifically noted the testimony regarding episodes of head-butting and mouth-grabbing committed by the defendant. The court ruled that the evidence was relevant to show who inflicted the injuries on the child and the intent with which they were done. The court also found the other acts evidence to be highly probative. It recognized the danger of unfair prejudice, but held that the prejudice was diminished because the other acts evidence involved women, not children, and the women gave no testimony about the defendant harming children. Finally, the court stated that it would give a limiting instruction to the jury regarding the use of the other acts evidence.

At trial, an expert on child abuse opined that some of the bruises on Caitlan's jaw were likely five days old and

---

[5] Contrary to the observation of the Court of Appeals, the defendant offered "accident" as an explanation of several of Caitlan's injuries. For example, the liver injury was attributed to a fall off a bicycle, and a facial injury was attributed to Caitlan falling on a toy box while in the defendant's care. However, the testimony of the pathologist and the expert on child abuse presented ample evidence that the injuries were not accidental.

resembled a fingernail imprint. Another mark on Caitlan's jaw was described by the expert as typical of the mark left when picking up and shaking a child in a certain way. The witness also described poking injuries sustained by Caitlan that could not have been accidental. The expert opined that the head injuries had been inflicted on the day the child died.

The defendant testified. He attributed several of Caitlan's injuries to a fall on a bathtub and falls on toy boxes that occurred while she was in his care. He denied he kicked or punched Caitlan on the day she died. He admitted he spanked her two days previously, but said he had "swatted" her only once.[6]

The jury convicted the defendant of felony murder and first-degree child abuse. The defendant was acquitted of open murder.

## III

The Court of Appeals has twice reversed the defendant's convictions. In its first opinion, the Court looked to *VanderVliet*, *supra*, and *People v Crawford,* 458 Mich 376; 582 NW2d 785 (1998), and found that the other acts evidence made none of the facts in dispute at defendant's trial more or less probable. The Court held that substantial dissimilarities existed between the assaults on the other acts witnesses and

---

[6] The bruises on Caitlan's buttocks were described by the experts as massive and as dating from three days before death. Multiple blows, not a single blow, were the cause.

the injuries sustained by the victim in this case. The Court stated its concern that the evidence had been used to show the defendant's propensity to commit a criminal act and concluded that the danger of unfair prejudice outweighed any marginal probative value the evidence possessed.

We remanded the case to the Court of Appeals after the prosecutor sought leave to appeal in this Court. On remand for reconsideration in light of *Sabin*, the Court of Appeals again reversed, reasoning that the other acts evidence was used to prove the "very act" that was the object of proof. Perceiving that a higher degree of similarity between the other acts evidence and the charged act was required, the Court held that there was "nothing, within the universe of violent assaults" particularly unusual or distinctive in the conduct of the defendant. The Court also stated that there was "precious little evidence that there was a criminal act" involving the child. In this the Court of Appeals erred.

IV

A trial court ruling admitting evidence is reviewed for an abuse of discretion. *People v Bahoda*, 448 Mich 261; 531 NW2d 659 (1995). An abuse of discretion occurs "when the result is 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but [the] defiance [of it] . . . .'" *Dep't of Transportation v Randolph*, 461 Mich 757,

9

768; 610 NW2d 893 (2000). An abuse of discretion involves far more than a difference of opinion. *Id*. Further, a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v Smith,* 456 Mich 543, 550; 581 NW2d 654 (1998). An abuse of discretion might, however, result where the trial court operates within an incorrect legal framework. In this case, the Court of Appeals expressed its difference of opinion with the trial court regarding the degree of similarity between the other acts evidence and the charged conduct. The approach taken by the Court of Appeals, however, failed to take into account the evidence presented to the trial court in support of the prosecutor's theory that Caitlan died as a result of multiple, nonaccidental, blunt force injuries. The evidence presented at the evidentiary hearing and at trial supported the trial court's conclusion that there was a common plan, scheme, or system in the defendant's assaults on the women and on the child. Indeed, the Court of Appeals panel's recitation of the facts is perplexing. Rather than viewing the evidence in a light most favorable to the prosecution, as it was required to do, the panel discounted the prosecution's evidence and accorded undue weight to defendant's version of the events. See slip op at 1-2.

In *Sabin*, we held that evidence of similar misconduct is logically relevant to show that the charged act occurred where

10

the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. For other acts evidence to be admissible there must be such a concurrence of common features that the uncharged and charged acts are naturally explained as individual manifestations of a general plan. *Sabin, supra* at 64-65. *Sabin* involved the use of other acts evidence to prove that the charged act occurred. We recognized that the degree of similarity between the uncharged and charged conduct required as a threshold for admissibility in such a case was higher than that needed to prove intent, but not as great as that needed to prove identity. *Id*. at 65.

In this case, the Court of Appeals imposed a standard of a high degree of similarity between the other acts and the charged acts, apparently because it believed that the evidence presented to the trial court did not demonstrate any unlawful conduct. Slip op at 10. The Court of Appeals was mistaken. The testimony and offers of proof at the evidentiary hearing suggested that Caitlan had died from multiple, nonaccidental, blunt force injuries, and that her death was a homicide.

Specifically, the evidence established that the "fish-hook" assaults on the defendant's former girlfriends were similar to the method or system that could have caused the fingernail marks on Caitlan's right cheek. Further, one of

11

the other acts witnesses described the forceful and hurtful "poking" inflicted upon her by the defendant. The forensic pathologist testified that Caitlan had fifteen to twenty circular bruises on her abdomen, the largest of which measured about one inch. The expert on child abuse testified that these injuries were typical of injuries received when a child has been poked, and that accidental injuries in that area of a child's body were completely atypical. Thus, contrary to the observations of the Court of Appeals, there were both injuries distinctive from ordinary assaults,[7] and similarities between the other acts (uncharged conduct) and injuries to the child (charged conduct). As we stated in *Sabin*, distinctive and unusual features are not required to establish the existence of a common design or plan. The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense. *Sabin, supra* at 65-66.

The trial court did not abuse its discretion in determining that the assaults by the defendant on his former girlfriends and the charged offenses regarding Caitlan shared sufficient common features to permit the inference of a plan, scheme, or system. The charged and uncharged acts contained common features beyond similarity as mere assaults.

---

[7] The Court of Appeals cited no authority for its view of what constitutes the "universe of violent assaults."

V

The trial court operated within the correct legal framework in determining the evidence admissible under *Sabin*. That the Court of Appeals had a different view of the evidence does not establish an abuse of discretion by the trial court. Therefore, we reverse the decision of the Court of Appeals, and remand this case to that Court for consideration of defendant's remaining arguments.

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

CAVANAGH and KELLY, JJ., concurred in the result only.