# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

NATHANIEL WALLACE,

      Defendant-Appellant.

UNPUBLISHED
May 14, 2015

No. 320348
Livingston Circuit Court
LC No. 12-020930-FH

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction following a bench trial of one count of larceny in a building, MCL 750.360.[1] Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 66 to 180 months' imprisonment. We affirm.

This prosecution stems from a classic "ringing the changes" scheme. See *People v Jones*, 143 Mich App 775, 777; 372 NW2d 657 (1985). Defendant's testimony, the store clerk's testimony, and the video from inside the store were all consistent and established the following set of facts. Defendant entered a Sunoco gas station and asked to purchase a $2 lottery ticket. The counter clerk handed the ticket to defendant, who in turn handed the clerk a $100 bill. After receiving his change, defendant told the clerk that he did not mean to break the $100 bill and asked if he could have it back. The clerk told him that she needed the $98 in change she had given him plus $2 more, plus an additional $2 for the ticket. The clerk testified that she became confused as defendant "pulled a wad of money from his pocket" and began counting out the money. She testified that she thought that she had retained possession of the $100 bill, but she realized it was gone when she checked her till after defendant left the building. She went after defendant, who by this time was driving away.

---

[1] Defendant was charged with three alternative counts: larceny in a building, larceny from a person, MCL 750.357, and false pretenses less than $200, MCL 750.218(2). The trial court acquitted defendant of larceny from a person. The court explained that because it "made the findings on the larceny in a building . . . there is no reason . . . to make a finding on false pretenses."

# I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence adduced below was insufficient to sustain his conviction. This Court reviews de novo a claim of insufficient evidence. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). When considering a sufficiency challenge, we view the evidence in a light most favorable to the prosecution to determine if the fact-finder could find the essential elements of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). We are mindful not to interfere with the trier of fact's duty to weigh the evidence, including determining the credibility of witness testimony. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Questions of intent may be proved by circumstantial evidence. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

The elements of larceny in a building are as follows:

(1) The actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the goods or property must be the personal property of another, (5) the taking must be without the consent and against the will of the owner, and (6) the taking must occur within the confines of the building. [*People v Randolph*, 242 Mich App 417, 421-422; 619 NW2d 168 (2000), aff'd in part and rev'd in part on other grounds 466 Mich 532 (2002).]

Defendant admitted in his testimony to taking money that did not belong to him with premeditation and intention of doing so, which satisfies five elements of the larceny in a building charge. Defendant challenges the sufficiency of the evidence to prove that his taking was nonconsensual, i.e., he argues that the evidence shows that the victim intended to transfer title, not just possession, of the money. If that were the case, defendant argues, he would only be guilty of false pretenses.

Distinguishing between larceny and false pretenses has long been commented on in Michigan caselaw. For example, *People v Martin*, 116 Mich 446, 450; 74 NW2d 653 (1898) provided the following discussion:

It is sometimes difficult to determine in a given case whether the offense is larceny or whether it is a case of false pretenses. We think the rule to be gathered from the authorities may be stated to be: In larceny the owner of the thing stolen has no intention to part with his property therein. In false pretenses the owner does intend to part with his property in the thing, but this intention is the result of fraudulent contrivances. If the owner did not part with his property in the thing, but simply delivered the possession, the ownership remaining unchanged, for the purpose of having the person to whom the property is delivered use it for a certain special and particular purpose, for the owner, the title would not pass, and its felonious conversion would be larceny. A distinction is made between a bare charge for special use of the thing and a general bailment, and it is not larceny if the owner intends to part with the property and deliver the possession absolutely although he has been induced to part with the goods by fraudulent means. *If, by trick or artifice, the owner of the property is induced to*

*part with the possession, to one who receives the property with felonious intent, the owner still meaning to retain the right of property, the taking will be larceny*; but if the owner part with not only the possession, but right of property also, the offense of the party obtaining the thing will not be larceny, but that of obtaining the goods by false pretenses. [Emphasis added.]

The scheme employed by defendant has been held to be both larceny and false pretenses, depending on the individual fact scenario. Compare *People v Long*, 409 Mich 346, 349-354; 295 NW2d 197 (1980) (holding a ringing the changes scheme to be false pretenses) with *People v Jones*, 143 Mich App 775, 777; 372 NW2d 657 (1985) (distinguishing a ringing the changes scheme from the holding in *Long* by referencing the cashier's awareness of the scheme and intent to retain title) because the victim intended to part with the money.

In *Long*, our Supreme Court was faced with classifying a similar "ringing the changes" scheme as larceny or false pretenses, and it chose the latter because the victim intended to part with the money:

> *While undoubtedly the cashiers would not have parted with the "additional" sum had they recognized it as such, it is apparent that the partings were voluntary and advertent. . . .* Because both possession and title were intended to be transferred, defendant's offense was that of obtaining money under false pretenses. [*Long*, 409 Mich at 351-352 (emphasis added).]

In that case, the cashiers were unaware that the defendant had obtained $10 in excess of what he was owed. *Id*. at 348. Even though it was obvious to the Court that the cashiers would not have parted with the excess money had they realized that the defendant came into possession of it, the Court concluded that at the time of the transfer, the parting with the excess money "represented a surrendering of possession accompanied by an intention, however hastily or ill-advisedly formed, to transfer title." *Id.* at 352.

In *Jones*, this Court was faced with making the same distinction between larceny and false pretenses in a similar "ringing the changes" scheme. This Court held that case to be one of larceny:

> At first glance, it would appear that an application of the Supreme Court's *Long* decision to this case would require the reversal requested by defendant. Upon closer examination, however, we note a factual distinction between these cases which critically affects the outcome. . . . In *Long*, the cashiers involved were *unaware that they had been duped by the defendant and thus intentionally, although unwittingly, transferred possession and ownership* of an additional $10 to the defendant. In the case before us, however, the cashier was never fooled by the defendant. Although he did gain possession of the additional $20 by taking it from the cashier and then asserting ownership when he passed it back and requested four $10 bills, *the cashier was fully aware that defendant was either mistaken or intentionally misrepresenting his ownership of the $20*. Thus, while the cashier did deliver possession of the $20, she never intended, nor did she effect, a transfer of title to the $20. This critical factor makes the Supreme

-3-

Court's analysis in *Long* inapplicable. [*Jones*, 143 Mich App at 779-780 (emphasis added).]

Here, the evidence supported the trial court's finding that defendant's taking of the money was not consensual. The clerk had possession of the $100 bill whether it was in her hand, on the counter, or on the register. Her testimony and video evidence of the incident provided sufficient evidence that she never voluntarily handed defendant the $100 bill. Rather, defendant took the money without her noticing after she became confused by defendant's actions. In her confusion, she mistakenly allowed defendant to obtain money that did not belong to him. Moreover, that she was suspicious of the transaction and immediately checked to see if she had retained possession of the $100 upon completion of the transaction is evidence that she was aware of the scheme and did not intend to transfer title of the excess money to defendant. Rather, she only intended to furnish defendant with correct change for his purchase. The evidence supports the verdict.

## II. SENTENCING

Defendant also argues that the court erred in departing from the sentencing guidelines. This Court reviews de novo whether the trial court's factors for departing from the guidelines were objective and verifiable, and the determination that the factors constituted a substantial and compelling reason for departure is reviewed for an abuse of discretion. *People v Horn*, 279 Mich App 31, 43; 755 NW2d 212 (2008), citing *People v Babcock*, 467 Mich 247, 264-265; 666 NW2d 231 (2003). When reviewing for abuse of discretion, the trial court must be given a degree of deference because of its familiarity with the facts and experience in sentencing. *People v Solmonson*, 261 Mich App 657, 671; 683 NW2d 761 (2004). A trial court abuses its discretion in sentencing "when the sentence imposed is not within the range of principled outcomes." *Id.*, citing *Babcock*, 467 Mich at 269, 274.

A court may depart from the statutory sentencing guidelines if it concludes that there is a substantial and compelling reason to do so. MCL 769.34(3). A substantial and compelling reason must be objective and verifiable, must keenly or irresistibly grab the attention of the court, and must be of considerable worth in deciding the length of the sentence. *Babcock*, 467 Mich at 257-258. A reason is objective and verifiable if it reflects actions that are "external to the minds of the judge, defendant, and others involved in making the decision, and must be capable of being confirmed." *People v Abramski*, 257 Mich App 71, 74; 665 NW2d 501 (2003), citing *People v Hill*, 192 Mich App 102, 112; 480 NW2d 913 (1991).

A factor that has already been taken into account by the sentencing guidelines may not be used as justification for a departure unless the court finds that the factor has been given "inadequate or disproportionate weight." *People v Harper*, 479 Mich 599, 617; 739 NW2d 523 (2007). Whether the factor was given inadequate or disproportionate weight is determined by its effect on the minimum sentence range. *People v Young*, 276 Mich App 446, 451; 740 NW2d 347 (2007). The trial court based the decision to depart from the sentencing guidelines, as well as the extent of the departure, on a determination that prior record variables (PRVs) 2 and 5 did not adequately account for defendant's extensive criminal history. It based the extent of the departure on the amount of prior convictions it determined were not adequately taken into account.

-4-

Even though defendant received maximum points allowable for each PRV, maximum points are given on PRV 2 to any amount of prior low-severity felonies over 3, and on PRV 5 to any amount of prior misdemeanors over 6. MCL 777.52 and 777.55. As noted by the trial court, defendant had 17 felony convictions and 34 misdemeanor convictions. This is clearly a quantifiable reason external to the court's mind on which to base the departure. The extent of this criminal record also constituted substantial and compelling reasons for departure. The trial court's attention was keenly drawn to the high number of prior convictions, as evidenced by the observation that it had never had before it a defendant with more.

It is also undisputed that prior convictions are of considerable worth in deciding the length of a sentence. In *Solmonson*, 261 Mich App at 671-672, we observed that an extensive criminal history may be sufficient justification for departure from the sentencing guidelines. The decision here to double the recommended minimum sentence was within a range of principled outcomes given defendant's criminal history. Therefore, the trial court did not abuse its discretion in departing from the sentencing guidelines.

Affirmed.


/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray