*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHANTRELL GARDNER,

      Defendant-Appellant.

UNPUBLISHED
March 12, 2020

No. 345472
Muskegon Circuit Court
LC No. 17-000367-FC

Before: MURRAY, C.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of three counts of armed robbery, MCL 750.529; one count of possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b; and one count of felon in possession of a firearm (felon in possession), MCL 750.224f. We affirm.

## I. BACKGROUND

Defendant's convictions arise from a robbery at a Shell gas station. Two witnesses testified that they saw a black or gray minivan parked outside the station on the night in question. Three employees of the station testified that an African-American man entered the gas station wearing a gray hooded sweatshirt and blue jeans and walked around the station's convenience store. According to the witnesses, the man then walked behind the counter and held a black gun to the cashier while demanding money. At some point in the encounter, a second man walked into the store to assist the robbery. The men forced the three attendants into the security room and the man with the gun took the surveillance system and two attendant's cellular phones before leaving.

One attendant identified defendant in a pretrial lineup; all three attendants identified defendant at a preliminary examination and at trial, though some witnesses stated that they had difficulty seeing defendant during the preliminary exam because he was seated behind a pillar in the courtroom. Before trial, the prosecution moved to admit evidence under MRE 404(b) of three other gas-station robberies defendant allegedly committed. The trial court admitted two of the robberies into evidence. Regarding the first robbery, the prosecution presented evidence that an African-American individual of similar build to defendant robbed a Marathon gas station while carrying a gun and wearing a gray hoodie pulled up to cover his face and blue jeans. A video of

-1-

the incident provided before trial showed a dark-colored van pull up to a gas pump before the robbery and sit idle for a few minutes. The van then drove away, but returned a few minutes later, sitting in the same position. Concerning the second robbery, the prosecution presented evidence that a similarly-built individual wearing a gray sweatshirt and blue jeans entered a BP gas station and walked about the aisles. The individual then walked behind the counter, pulled a gun on the attendant, and took money from the register. The individual then took the attendant to the surveillance room to take the surveillance footage, was unsuccessful in getting the surveillance tape to eject, and left with the attendant's cellular phone. The attendant stated that she saw the man leave in a brown or gray van. The BP attendant identified defendant as the robber, although no Marathon employee could make such an identification. The prosecution presented evidence at indicating that the van in question belonged to defendant's wife.

At the close of the trial, the jury found defendant guilty of the aforementioned crimes. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve prison terms of 2 years for the felony-firearm conviction and 40 to 70 years for the armed-robbery and felon-in-possession convictions. This appeal followed.

## II. ANALYSIS

### A. IDENTIFICATION EVIDENCE

Defendant first argues that the trial court erred when it denied his motion to suppress the Shell attendants' identifications of him during the preliminary examination because the identifications were unduly suggestive. "On review, the trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993).

Defendant argues that the trial court should have suppressed the preliminary-examination identifications of him by the three Shell-station attendants because defendant was "paraded in front of them wearing jail clothing and shackles while they were seated outside the courtroom waiting to testify."[1] Due process protects defendants when law-enforcement officers employ unnecessarily suggestive procedures to procure an identification. See *People v Thomas*, 501 Mich 913, 913; 902 NW2d 885 (2017). When law enforcement utilizes an unnecessarily suggestive identification procedure, due process requires the suppression of all subsequent identifications incurably tainted by the suggestive identification. See *People v Colon*, 233 Mich App 295, 303; 591 NW2d 692 (1998).

Yet, as the federal Supreme Court recognized in *Perry v New Hampshire*, 565 US 228, 245-248; 132 S Ct 716; 181 L Ed 2d 694 (2012), when the identification challenged was not arranged by law enforcement—but rather occurred during judicial proceedings—the due-process clause is not implicated.

---

[1] It appears that one of the three witnesses was actually sitting at the witness's stand at this time, while the other two witnesses were seated outside the courtroom.

*Perry* makes clear that, for those defendants who are identified under suggestive circumstances not arranged by police, the requirements of due process are satisfied in the ordinary protections of trial. These protections include the right to confront witnesses, the right to effective assistance of an attorney who can expose the flaws in identification testimony on cross-examination, the right to eyewitness-specific jury instructions as adopted by the jurisdiction, and the right to be presumed innocent until found guilty beyond a reasonable doubt by a jury of the defendant's peers. [*US v Whatley*, 719 F3d 1206, 1215-1216 (CA 11, 2013) (internal citations omitted).]

Defendant does not challenge the pretrial line-up employed for one of the Shell witnesses. Accordingly, because defendant's due-process challenge relates solely to the in-court identifications provided by the witnesses, he is not entitled to a new trial.

## B. PROSECUTORIAL ERROR

Next, defendant argues that the prosecutor committed error requiring reversal by commenting during the trial and closing argument that defendant intentionally hid behind a pillar in the courtroom during the preliminary examination to mask his identity from the witnesses. Prosecutorial error issues are decided on a case-by-case basis. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "This Court reviews the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *Id.*

During the prosecutor's direct examination of one of the Shell-station attendants at trial, the prosecutor referenced the attendant's difficulty in viewing the defendant at the preliminary examination due to the presence of a pillar in the courtroom. The prosecutor also called a detective to elicit testimony about the preliminary examination and the pillar that blocked the witnesses' view of defendant. The defense objected to a line of questioning involving defendant's position in relation to the pillar and the following exchange occurred:

*The Court*: At the time, every one of them testified or they testified, no, they couldn't see him, and they testified it was because of a pillar. So whether he's sitting back or forward, I don't know what—

*The Prosecution*: Well—

*The Court*: It's not relevant. What's relevant is: Did they identify him. And they couldn't at first because of the pillar, so.

*The Prosecution*: The—

*The Court*: I would sustain, and that's—it's not relevant.

*The Prosecution*: Well, can I—If he's intentionally back so he can't see him—

*The Court*: Can you read his mind to see that he was intentionally sitting back? You cannot, so.

-3-

The trial court ultimately sustained defense counsel's objection to the line of questioning.  Then, during closing argument, the  prosecutor made the follow remarks:

> *The Prosecutor*:  Now, I put forth to you, Ladies and Gentlemen, if he so innocent, why is he staying behind the pillar?  Because it came up on the first witness.

> *Defense Counsel*:  Judge, I'm going to object.

> *The Court*:  Okay.  Mr. Corbett—

> *Defense Counsel*:  There was no testimony in evidence indicating that he had intentionally stayed behind the pillar.

> *The Prosecutor*:  They each—

> *Defense Counsel*:  And you can't even make an argument based on that.

> *The Court*:  Go ahead.

> *The Prosecutor*:  They each testified their view was obstructed by the pillar.

> *Defense Counsel*:  And I'm—Nobody testified that he put the pillar in the courtroom.

> *The Prosecutor*:  I didn't say that.

> *The Court*:  And it's stated that the pillar was in between the two tables. There was no indication that he leaned forward, leaned back.  You cannot argue that he—or even insinuate that he hid by hiding behind that pillar.

> *The Prosecutor*:  He's—

> *The Court*:  So—

> *The Prosecutor*:  He sat back behind the pillar is what my comment was.

> *The Court*:  Sustained.  Sustained.

We agree with defendant that the prosecutor's questioning and statements were improper, given that the prosecutor did not properly present any evidence which would establish that defendant intentionally hid behind the pillar at the preliminary exam.  Prosecutors are "free to argue the evidence and reasonable inferences from the evidence as they relate to their theory of the case," *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009), but they may not argue evidence that has not been properly admitted.  Nonetheless, to warrant relief, the prosecutor's error must have "so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *People v Blackmon*, 280 Mich App 253, 269; 761 NW2d 172 (2008). Here, we do not believe that this standard has been met.  The trial court shut down the prosecutor's questioning and argument in no uncertain terms, indicating that there was no evidence that

defendant intentionally hid behind the pillar. Then, the trial court instructed the jury that it was its duty to judge the evidence in this case, that the lawyers' statements were not evidence, and that it could not consider evidence that was excluded. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Thus, on this record, we cannot conclude that the prosecutor's improper remarks so infected the trial with unfairness as to warrant granting defendant a new trial.

## C. OTHER-ACTS EVIDENCE

Defendant also argues that the trial court abused its discretion when it admitted evidence of the prior robberies at Marathon and BP gas stations under MRE 404(b)(1). "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (internal citation and quotation marks omitted).

Under MRE 404(b)(1):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b)(1) is an inclusionary, not exclusionary, rule. *People v Danto*, 294 Mich App 596, 599; 822 NW2d 600 (2011). To be admissible under MRE 404(b)(1), (1) the evidence must be offered for a proper non-character-conformity purpose (2) the evidence must be relevant, MRE 402, and (3) the evidence must not be otherwise prohibited by MRE 403. *Id.* (internal citation, quotation marks, and brackets omitted). "Exclusion is required under MRE 403 when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (internal citation and quotation marks omitted). When making its determination under MRE 403, the trial court may consider the following nonexhaustive list of factors:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012).]

In this case, the trial court admitted evidence of the Marathon and BP robberies as evidence of defendant's common scheme, plan, or system of committing robberies. To admit evidence under this theory, there "must *be such a concurrence of common features* that the charged acts and

the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). "The evidence of the uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *People v Hine (After Remand)*, 467 Mich 242, 253; 650 NW2d 659 (2002).

Defendant suggests that the Marathon, Shell, and BP robberies lacked sufficient similarity to warrant admission under a common scheme theory and that the robberies contained characteristics common in all gas station robberies. We disagree. "[D]istinctive and unusual features are not required to establish the existence of a common design or plan." *Id*. at 252-253. Here, the evidence tended to show that an African-American man of defendant's build arrived at a gas station in the same dark-colored minivan, wearing a gray hooded sweatshirt and blue jeans. The man briefly scouted the location, before coming behind the counter, pulling a dark-colored gun on the attendant, and demanding money from the register. In the charged offense and one of the prior acts, the man then attempted to steal the station's surveillance footage and left with a victim's cellular phone. Although there were some dissimilarities between the crimes, we conclude that there were enough similarities to admit the prior acts as evidence of defendant's common plan, scheme, or system of robbing gas stations.

Defendant argues that the dissimilarities between the charged and uncharged crimes render the prior acts unduly prejudicial. We disagree. Defendant denied committing the instant offense and challenged the identifications of the Shell-station employees. Although no witness from the Marathon robbery could identify defendant, a witness from the BP robbery identified defendant as the robber. This identification and the similarity of the charged and uncharged acts in all three robberies were highly relevant to show that defendant followed a similar plan when robbing gas stations and was therefore highly relevant to proving defendant's identity as the perpetrator of the instant offense. The evidence was therefore prejudicial, but not unduly prejudicial. Accordingly, we conclude that the trial court did not abuse its discretion in admitting evidence of the prior robberies.[2]

D. OV 14

Finally, defendant argues that the trial court erred when it assessed 10 points for Offense Variable (OV) 14. The proper interpretation and application of the sentencing guidelines are legal questions that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of

---

[2] Because defendant has shown only one error—the prosecutor's improper comments—and because that error on its own does not warrant reversal of defendant's conviction, we reject defendant's argument that he is entitled to a new trial due to the cumulative effect of multiple errors. There are simply no errors to aggregate.

the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 14 is assessed either zero points or 10 points, depending on whether the defendant was "a leader in a multiple offender situation" when considering the "entire criminal transaction." MCL 777.44. A "leader" is a one who guides or directs a criminal offense. *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). In this case, a preponderance of the evidence supports that defendant committed three gas-station robberies, with varying levels of assistance. In each robbery, defendant arrived at the station in his wife's minivan, scouted the location, and pulled a gun on gas-station attendant. Near the end of the instant robbery, defendant was joined by a second individual—categorized as a lookout by one witness—who helped him to steal the surveillance footage. The trial court's finding that defendant was the leader in the instant crime is supported by the facts that defendant was the common element in each robbery despite varying numbers of offenders, utilized his wife's vehicle for the offenses, and was the principle actor directing the actions of the Shell-station attendants. Accordingly, we are not left with a definite and firm conviction that the trial court erred by scoring OV 14 at 10 points.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly