*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MATTHEW JOHN HOLTMAN,

      Defendant-Appellant.

UNPUBLISHED
March 7, 2024

No. 362520
Allegan Circuit Court
LC No. 2019-022614-FC

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

MURRAY, J. (*dissenting*).

A trial court's decision to admit evidence is reviewed for an abuse of discretion, *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017), which occurs only "when its decision falls outside the range of principled outcomes," *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). A trial court may abuse its discretion when its decision arises from an "incorrect legal framework," *People v Hine*, 467 Mich 242, 250-251; 650 NW2d 659 (2002), or when the evidence admitted is "inadmissible as a matter of law," *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). But, as has been long recognized, "a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Hine*, 467 Mich at 250. Here, on the basis that the trial court abused its discretion on two evidentiary issues, the majority reverses defendant's convictions and remands for a new trial. For the reasons expressed below, defendant's convictions should be affirmed.

## I. ADMISSION OF PROPENSITY EVIDENCE

In addressing defendant's argument that the trial court erred by admitting propensity evidence because its probative value did not outweigh its unfair prejudice under MRE 403 and *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012), the majority concludes that the propensity evidence (which all agree was admissible under MCL 768.27a) was inadmissible under MRE 403 because (1) the acts occurred when defendant was at an age where he could not "form criminal culpability" and (2) a balancing of the *Watkins* factors (which the trial court did not fully perform) required exclusion of the evidence. These will be addressed *seriatim*.

-1-

## A. CRIMINAL CULPABILITY

As noted, there is no dispute that the other-acts evidence was admissible under MCL 768.27a.  See *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007) (holding that, "[i]n cases involving the sexual abuse of minors, MCL 768.27a now allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors"); *People v Beck*, 510 Mich 1, 20; 987 NW2d 1 (2022) ("MCL 768.27a permits evidence that a defendant is 'accused of committing' a listed offense against a minor; it does not require a defendant to have been convicted of a listed offense.").

The majority (but not defendant himself), citing to recent legal developments regarding juveniles, concludes that because defendant could not be criminally culpable for either of the "other acts" committed against AD, they are more prejudicial than probative.  But the juvenile justice law applied by the majority has no application to admitting other-acts evidence under the statute or court rule.  Indeed, under these controlling sources of law the question is not whether defendant could be (or was) convicted of the crimes, *Beck*, 510 Mich at 20, but is instead whether he committed the *acts*.  See also *Pattison*, 276 Mich App at 618-619 ("When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b).").  The question of whether defendant could have been held criminally liable is simply legally irrelevant, and the majority cites no law supporting a different proposition.  And, as noted, *Beck* and other decisions say the opposite—even as to juveniles.  See *People v Cowhy*, 330 Mich App 452, 467 n 6; 948 NW2d 632 (2019)[1] (recognizing that offenses "allegedly committed as a juvenile" could be admitted under MCL 768.27a); *In re Kerr*, 323 Mich App 407, 414-415; 917 NW2d 408 (2018) (concluding that MCL 768.27a applies during juvenile delinquency proceedings, when any other offense necessarily would have been committed when the individual was a juvenile).

## B. MORE PREJUDICIAL THAN PROBATIVE

In any event, trial courts must engage in the MRE 403 balancing analysis with respect to each separate piece of evidence offered under MCL 768.27a. *Watkins*, 491 Mich at 489. Importantly, when weighing the propensity inference under MRE 403 in the context of MCL 768.27a, a trial court must "weigh the propensity inference *in favor of the evidence's probative value rather than its prejudicial effect*." *Id*. at 487 (emphasis added).  The majority effectively ignores this standard, and instead provides its own analysis that weighs the propensity evidence in favor of a prejudicial effect conclusion.

Initially, it is critical to point out that, contrary to the majority's conclusion that the trial court's failure to analyze all the *Watkins* factors alone constitutes an abuse of discretion, the

---

[1] The majority attempts to discount *Cowhy* by noting that its statements about the admissibility under MCL 768.27a of a defendant's admissions about sexually assaulting another while he was a juvenile was dicta.  True enough, but no one disputes in the case before us that the evidence was admissible under the statute.  And, even if dicta, it is accurate with respect to what the statute allows into evidence.

*Watkins* Court held just the opposite: a trial court's failure to conduct such an analysis is harmless error if, in fact, MRE 403 does not require the exclusion of the other-acts evidence. See *id*. at 491. Thus, that fact alone does not warrant a finding that the trial court abused its discretion. And, because a proper MRE 403 analysis does not require exclusion of the evidence, the trial court's failure to fully engage the factors was not an abuse of discretion.

Turning to that analysis, a trial court may exclude admissible evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. "Unfair prejudice" exists when "there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

In applying MRE 403 to evidence admissible under MCL 768.27a, the *Watkins* Court, 491 Mich at 487-488, stated:

> [C]ourts must weigh the propensity inference *in favor* of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. . . .
>
> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [Emphasis added.]

The evidence admitted on the prosecution's motion was the testimony of AD, defendant's cousin, who wrote a statement that she was sexually assaulted by defendant during their childhood. In admitting the evidence, the trial court stated that the prosecutor did not have to justify the admissibility of the evidence under MRE 404(b), see *Pattison*, 276 Mich App at 618-619, and that "any prejudice to the defendant is outweighed by the probative value and especially due to the details provided by the prosecutor" about AD's history of contact with defendant.

During trial, AD agreed in her testimony that "there were lots of times" during her childhood in which she felt physically unsafe when she was with defendant. She testified about four separate incidents of defendant sexually assaulting her, from when AD was "about 2 years old" and defendant was six years old, to when AD was "either 9 or 10, I'll say 10" and defendant was "roughly 14, maybe 15." During cross-examination, AD agreed that she came forward about defendant's sexual assault after she heard about defendant's sexual abuse of the victim. AD also

testified that she was "positive" about the accuracy of her memories and that she harbored no ill will toward defendant.

The similarities between defendant's other acts and the charged crime are enough that the probative value of the testimony is not substantially outweighed by the risk of unfair prejudice. See *Watkins*, 491 Mich at 487. In *People v Solloway*, 316 Mich App 174, 194-195; 891 NW2d 255 (2016), this Court held that "the acts are not so dissimilar as to preclude admission of the other-acts evidence" because: (1) the victim of the other-acts sexual abuse and the victim of the charged-conduct sexual abuse were both close in age at the time of the assault; (2) both victims were related to the defendant; and (3) the defendant's conduct was similar in both cases of sexual abuse. Similarly, here (1) both the victim and AD were minors, as the victim was between the ages of five to eight when defendant sexually abused her, and AD was between the ages of two to nine or ten; (2) both the victim and AD were related to defendant—the victim was his stepdaughter, and AD his cousin; and (3) both cases of sexual abuse involved instances of defendant asking the victims to perform oral sex. This factor weighs in favor of the evidence's admission.

Regarding the temporal proximity of the other acts to the charged crime, see *Watkins*, 491 Mich at 487, defendant argues that he was a child when he assaulted AD and that, therefore, AD's testimony had no probative value on the question whether he was abusing the victim as an adult. However, in *Solloway*, 316 Mich App at 195, we held that although the defendant's prior act occurred 12 years before the charged crime, "given how similar the acts are, the temporal divide between their occurrences, standing alone, does not preclude the evidence's admission."

Defendant indicated that in *People v Hoskins*, 342 Mich App 194, 206; 993 NW2d 48 (2022), this Court held that "evidence of prior acts committed 17 years before many of the charged offenses presents a risk that the jury may give undue weight to the other-acts evidence and overlook reasonable doubts stemming from a lack of evidence presented in support of the current charges." However, the *Hoskins* Court distinguished *Solloway*, stating that "[o]ur reasoning in *Solloway* suggests that a lengthy temporal proximity supports exclusion of other-acts evidence when the other acts and the charged crime lack similarities." *Hoskins*, 342 Mich App at 206. In *Solloway*, the victims had extensive similarities, whereas in *Hoskins*, these similarities were not present. *Id*. at 206-207. And here, as noted, both the victim and AD had the same similarities as the victims in *Solloway*. So, although the two acts were not temporally proximate to each other, this temporal divide alone does not preclude the evidence's admission considering the similarity of the acts.

Regarding the infrequency of the other acts, *Watkins*, 491 Mich at 487, defendant argues that they should not be admitted because there was no frequency of these acts past the age of 14, and any acts committed before defendant was 14 years old should not be considered. However, as noted earlier, defendant's juvenile status at the time the bad acts occurred does not preclude their admission. Therefore, this factor weighs in favor of the evidence's admission because AD testified about at least three separate incidents of sexual assault by defendant throughout a seven-year period. See *Solloway*, 316 Mich App at 195 (finding that the other acts were not infrequent because the abuse was not a "one-time occurrence"); see also *Beck*, 510 Mich at 21-22 (finding that, because victim testified about three separate incidents, the other acts were not infrequent).

As to the presence of intervening acts, see *Watkins*, 491 Mich at 487, defendant argues that this factor weighs in favor of excluding the evidence because testimony showed that he had a

"sterling reputation of maintaining a positive relationship with his children and other children" in the years following the alleged last instance of abuse when he was 14 years old. However, even though there was no evidence that defendant committed any bad acts during that time, this does not suggest that defendant's sexual interest in minors had waned. This factor does not favor exclusion of the evidence.

AD's testimony was not highly reliable, but it was reliable enough that its probative value was not substantially outweighed by the risk of unfair prejudice. See *Watkins*, 491 Mich at 487. Defendant pointed out that AD testified about memories that happened when she was two years old and that these memories were not witnessed by anyone else. Nevertheless, the *Beck* Court, held that although the defendant attempted to undermine the reliability of the other-acts testimony because the victim was the only one to testify about the act, overall, the probative value of the propensity evidence outweighed the prejudicial value. *Beck*, 510 Mich at 22. And, the trial court here came to the same reasonable conclusion. This factor, overall, weighs in favor of the evidence's admission.

Finally, defendant argues that there was a lack of need for evidence beyond the victim and defendant's testimony, see *Watkins*, 491 Mich at 487-488, and that AD's testimony was irrelevant because the jury did not need to know about defendant's actions as a young child or teen to determine what he did as an adult. However, this argument is unavailing because the trial court indicated that this evidence was "extremely probative of intent" because it gave the jury "a full and complete picture of the defendant's history." Additionally, as in *Solloway*, 316 Mich App at 196, there were no eyewitnesses to defendant's sexual abuse of the victim, and therefore, AD's testimony was highly relevant and probative to the question whether defendant sexually abused the victim. Therefore, this factor, overall, weighs in favor of the evidence's admission.

Overall, and applying the principle that the factors should be weighed *in favor* of the probative value of the propensity evidence, the *Watkins* factors support the admission of AD's testimony about defendant's sexual abuse. Therefore, the trial court did not abuse its discretion. See *Feezel*, 486 Mich at 192.

## II. ADMISSION OF HEARSAY TESTIMONY

The majority also incorrectly holds that the trial court abused its discretion by admitting the hearsay testimony of Dr. Debra Simms, because the statements were not made for purposes of medical treatment under MRE 803(4).

Hearsay is any statement that the declarant does not make while testifying and that a party offers "to prove the truth of the matter asserted in the statement." MRE 801. Generally, hearsay is inadmissible, MRE 802, unless it falls under an exception pursuant to MRE 803 or MRE 804. MRE 803(4) provides that "[s]tatements made for purposes of medical treatment or medical diagnosis" are not excluded by the hearsay rule. Such statements are admissible pursuant to MRE 803(4) "if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

In *People v Meeboer*, 439 Mich 310, 323-325; 484 NW2d 621 (1992), the Court held that "further analysis of the circumstances surrounding the [medical] examination of a child is necessary to determine whether the child understood the need to be truthful to the physician," and provided factors related to determining trustworthiness:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [Citations omitted.]

Dr. Simms, of the Helen DeVos Center for Child Protection, examined the victim for evaluation of suspected child abuse. Dr. Simms testified about information that the victim shared while they were alone in the examination room. Her testimony included the names that the victim used to refer to her anatomical parts "because we [the medical center] needed to know what she calls those parts because we refer to them by the same name," as well as statements by the victim detailing defendant's sexual abuse and how often the abuse occurred "because our testing can be related to how far back the exposure was." Dr. Simms testified that the victim's statements were important "because children that have had those kinds of exposures we want to make sure they understand what the colposcope is and what it's doing and that we are recording for medical purposes."

The trial court overruled defendant's objection to this testimony, stating that "a sufficient foundation has been laid by the doctor's testimony that these statements were made for the purpose of a medical treatment" under MRE 803(4). Pursuant to the factors listed in *Meeboer*, 493 Mich at 324-325, the trial court did not abuse its discretion in finding that the victim's statements were reasonably necessary for diagnosis and treatment and that she was truthful so that she could receive proper medical care. See *Mahone*, 294 Mich App at 214-215.

First, the victim was eight years old at the time of the examination, and we have previously held that a victim who was eight years old during a sexual-abuse examination was "mature enough to relate the details to the doctor and others." *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). Consistent with that, Dr. Simms described the victim as "engaged," "willing to talk," and "very talkative." Second, the victim's statements were not elicited with leading questions, see *Meeboer*, 493 Mich at 324-325, as Dr. Simms only asked the victim basic questions such as "why she was here today for a check-up," her age at the time of the abuse, and "if she had anything else to tell me before the check-up." Third, Dr. Simms asked the victim about how she referred to her anatomical parts so that Dr. Simms could refer to them by the same name, and this "childlike

terminology" was used throughout the victim's exam, showing genuineness in the victim's statements. *Id*. at 325. Additionally, the prosecutor did not initiate the medical exam. Defendant's argument that the medical treatment was sought to support defendant's criminal charges is unavailing, as Dr. Simms testified that "[m]edical consultation was requested by her mother," not by law enforcement. And, even if the examination was in part to investigate the sexual assault, this factor is not dispositive. See *Duenaz*, 306 Mich App at 96.

Furthermore, only two months had elapsed between the victim's initial disclosure to her teachers and Dr. Simms's examination. JG testified that the victim was still suffering from emotional pain and distress from the sexual abuse when she took her for the medical examination, stating that the victim "was trying to put on a big face with me . . . she was trying to be strong." See also *Duenaz*, 306 Mich App at 96. Finally, the purpose of the examination was for medical, not psychological purposes, the victim identified defendant as her abuser during the examination, and there was little to no existence of motive to fabricate given that JG testified that "I told [the victim] she'd have to tell [Dr. Simms] what had happened, but I didn't influence her in any way."

Given this evidence and the controlling law, the trial court did not abuse its discretion by finding that Dr. Simms's testimony was admissible under MRE 803(4) as a statement made for purposes of medical treatment or medical diagnosis. See *Feezel*, 486 Mich at 192. The trial court's decisions should be affirmed.

/s/ Christopher M. Murray