*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHANE WILLIAM WHEELER,

      Defendant-Appellant.

UNPUBLISHED
October 15, 2020

No. 347964
Kent Circuit Court
LC Nos. 18-00198-FH;
          18-00199-FH;
          18-00260-FH

Before: MURRAY, C.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant, Shane William Wheeler, was convicted by a jury of three counts of breaking and entering with intent to commit larceny, MCL 750.110. The trial court sentenced Wheeler as a fourth-offense habitual offender, MCL 769.12, to 6 to 30 years' imprisonment for each conviction. We affirm Wheeler's convictions and sentences, but remand for the ministerial task of correcting Wheeler's sentencing documentation as described in this opinion.

## I. BACKGROUND

In October 2017, Wheeler committed three separate breaking and enterings with DP, who is the 16-year-old son of Wheeler's girlfriend.

The first breaking and entering occurred at Excel Entertainment Group ("Excel"), where Wheeler worked as an independent contractor. DP and Wheeler went to Excel "around midnight" on October 12, 2017. Wheeler, who knew that Excel did not have surveillance cameras, parked his vehicle several businesses away from Excel. DP and Wheeler, who were both wearing gloves, then walked to Excel and entered through a door that Wheeler had propped open when he was present in the building earlier that day. Once inside the building, Wheeler used tools to pry open several doors in order to obtain access to a safe, which DP and Wheeler believed to contain money. DP and Wheeler placed the safe on a dolly, transported the safe to Wheeler's vehicle, and then left the scene.

-1-

DP and Wheeler later decided to break into a Rio Grand restaurant. On October 22, 2017, DP and Wheeler went inside Rio Grand to "scope out the place" and to determine if there were any alarms or cameras. DP and Wheeler then returned to Rio Grand sometime in the evening of October 22, 2017, or the morning of October 23, 2017. Wheeler parked his vehicle several businesses away from the restaurant, and DP and Wheeler wore gloves to prevent leaving behind any fingerprints. Before entering Rio Grand, Wheeler cut the cables and wires to an electrical box that was located at the back of the restaurant. After waiting several minutes, Wheeler "pried open" the building's back door and broke the glass to an interior door. Once inside the restaurant, Wheeler removed an alarm system "from the wall" and cut the wiring. Wheeler pried open a digital jukebox and the door to an office, both of which contained money. DP and Wheeler also tried to remove safes that they found in an office, but they were unable to do so because the safes were "implanted into the ground." After DP and Wheeler were unable to pry open the safes, they left the restaurant.

DP and Wheeler then went to a Mr. Burger restaurant. Wheeler again parked his vehicle several businesses away from the restaurant. At about 3:30 a.m. on October 23, 2017, Wheeler "disconnected" the "electrical box" that was located at the back of the restaurant. Wheeler then pried open the back door and the door to an office. After DP and Wheeler unsuccessfully attempted to pry open a safe that was located in the office, they left the scene. The cover of the alarm keypad was later found on the floor, and security footage was not available because it had been "erased . . . when the power was cut off."

Detective Adrian Sybenga was instructed to investigate the breaking and entering at Excel. Wheeler was considered a suspect because he had stopped working at Excel soon after the breaking and entering occurred. As part of his investigation into Wheeler, Detective Sybenga interviewed DP. DP informed Detective Sybenga that he and Wheeler had broken into Excel. DP also divulged during the interview that he and Wheeler had broken into Mr. Burger and Rio Grand.

Wheeler was charged with breaking and entering into Excel in case number 18-00198-FH, Mr. Burger in case number 18-00199-FH, and Rio Grand in case number 18-00260-FH. The trial court later joined the charges for a single trial.

On January 7, 2019, the prosecutor filed a notice of intent to introduce evidence regarding Wheeler's involvement in two prior breaking-and-entering incidents. On the day trial was scheduled to commence, the prosecutor reiterated her intention to introduce the other-acts evidence. Specifically, the prosecutor moved to admit evidence regarding prior 2009 and 2012 breaking-and-entering incidents involving Wheeler in order to prove a common plan, scheme, or system. Defense counsel objected to the introduction of the other-acts evidence and argued that the evidence was more prejudicial than probative. After hearing oral argument, the trial court ruled that evidence of the 2009 and 2012 incidents was admissible, and trial commenced.

At trial, after the prosecutor presented evidence concerning the 2017 crimes, testimony was presented concerning the 2009 and 2012 breaking-and-entering incidents. Wheeler testified in his own defense and denied that he committed the 2017 breaking and enterings. However, Wheeler admitted to committing the 2009 and 2012 offenses. The jury convicted Wheeler as charged, and he was sentenced to terms of imprisonment. This appeal followed.

## II. ANALYSIS

## A. OTHER-ACTS EVIDENCE

Wheeler argues that he was denied his due process right to a fair trial as a result of the trial court erroneously admitting other-acts evidence that was unfairly prejudicial. We disagree.

"We review a trial court's admission of evidence of bad acts for an abuse of discretion. A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2007) (citations omitted). We review de novo questions of law such as "whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

"[E]vidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). Such evidence may, however, be admissible for another purpose. *Id*. A nonexclusive list of permissible purposes for admitting other-acts evidence is set forth in MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) is a rule of inclusion, not exclusion. *People v VanderVliet*, 444 Mich 52, 64-65; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Thus, "[r]elevant other acts evidence does not violate [MRE] 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *Id*. at 65.

In *VanderVliet*, the Michigan Supreme Court adopted the approach that was enunciated by the United States Supreme Court in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*VanderVliet*, 444 Mich at 55.]

In this case, the prosecutor sought to introduce evidence of the 2009 and 2012 incidents as evidence of a common plan, scheme, or system, and Wheeler does not contest that the evidence was offered for a permissible purpose under MRE 404(b)(1). Rather, Wheeler argues that the evidence was not relevant. We disagree.

Under MRE 404(b)(1), other-acts evidence must be "logically relevant to a material fact in the case[.]" *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). Other-acts evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Sabin (After Remand)*, 463 Mich 43, 56-57; 614 NW2d 888 (2000), quoting MRE 401. "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin (After Remand)*, 463 Mich at 63. However, "[l]ogical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id.* at 64. Furthermore, there must be more than a mere similarity in the result of the conduct. *Id.* at 64-65. There must be "a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id.* (emphasis and citation omitted).

The prosecutor presented evidence that in March 2009, Deputy Randall Heaton was dispatched to a business in Ottawa County at about 2:59 a.m. When Deputy Heaton arrived at the scene, he noticed that the front door of the business was locked but that a window on the right side of the building had been broken. Deputy Heaton saw Wheeler opening a cash register, which was located in the front of the business. Wheeler was apprehended, and Deputy Heaton found money on Wheeler's person. According to Deputy Heaton, Wheeler admitted that he took money from the business.

The prosecutor also presented evidence that in August 2012, Fruitport Township Patrol Officer Timothy Thompson was dispatched to a strip mall at around 6:00 a.m. When Officer Thompson arrived at the scene, he saw Wheeler standing at the front door of an office that was located inside the strip mall. Wheeler had a flashlight and a tool in his hand, which he was using to pry open the office door. Wheeler started running when he saw Officer Thompson, and Officer Thompson ultimately apprehended Wheeler. Wheeler was wearing latex gloves and had a small pry bar, a screwdriver, and two flashlights. Wheeler also had money in his pocket, and Wheeler admitted that he had broken into four of the five businesses in the strip mall. He also admitted that he had parked his vehicle a few blocks away and then walked to the strip mall.

On appeal, Wheeler argues that "[t]here were no distinctive characteristics about the crimes. There is absolutely nothing unusual about the prior alleged incident that shows a plan, scheme and/or system of robbing victims that is unique. The prior incident[s] and this incident are both merely the normal system for robbing vacant buildings."

We conclude that the prior incidents were sufficiently similar to support an inference that Wheeler had a common scheme, plan, or system when he committed the crimes in this case. For example, the two prior incidents and the three 2017 incidents each involved Wheeler breaking into a business in order to steal money. In all five incidents, Wheeler targeted businesses at times when it was unlikely that the owners or employees would be present. In both the 2012 incident and the 2017 incidents, Wheeler parked his vehicle several businesses away from the business that he intended to enter and wore gloves so as to prevent leaving behind fingerprints. Additionally, Wheeler's manner of entering the businesses and gaining access to rooms and items in the businesses was always similar. For example, in the 2009 incident, Wheeler broke a window to

-4-

enter the business, and the record also indicates that Wheeler broke a glass door to enter Rio Grand. Additionally, in the 2012 incident and the 2017 incidents, Wheeler used tools to pry open doors and objects inside the businesses. As such, we conclude that there is a concurrence of common features between the 2009, 2012, and 2017 incidents that can be explained as individual manifestations of a general plan. See *Sabin (After Remand)*, 463 Mich at 64-65.

Wheeler also argues that evidence of the 2009 and 2012 breaking and enterings was not relevant because any similar characteristics were common of any breaking and entering. However, "distinctive and unusual features are not required to establish the existence of a common design or plan." *People v Hine*, 467 Mich 242, 252-253; 650 NW2d 659 (2002). Rather, "[t]he evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *Id*. at 253. Moreover, this Court has held that "[a] decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Therefore, it was not an abuse of discretion for the trial court to conclude that the other-acts evidence was relevant.

Furthermore, contrary to Wheeler's argument on appeal, this evidence was not unfairly prejudicial. "MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Bass*, 317 Mich App 241, 259; 893 NW2d 140 (2016) (quotation marks and citation omitted).

In this case, the other-acts evidence was more than marginally probative. The other-acts evidence was necessary for the nonpropensity purpose of showing that Wheeler had a consistent method of breaking into businesses and to rebut Wheeler's position that he did not commit the 2017 crimes. See *People v Jackson*, 498 Mich 246, 276; 869 NW2d 253 (2015) (concluding that other-acts evidence was not unduly prejudicial because it was "necessary to counter the defendant's theory that the . . . allegations . . . were fabricated"). Furthermore, it is improbable that the jury gave the other-acts evidence undue or preemptive weight because both the prosecutor and the trial court took steps to minimize any prejudicial effect or confusion that the evidence of the 2009 and 2012 incidents might have had on Wheeler's case. For example, the prosecutor presented the testimony regarding the 2009 and 2012 incidents after she had presented all of the evidence regarding the 2017 charges. After the jury heard the brief testimony regarding the 2009 and 2012 incidents, the trial court instructed the jury that it should not consider evidence of Wheeler's other acts for propensity purposes. Jurors are presumed to follow their instructions. See *Bass*, 317 Mich App at 263. During her closing argument, the prosecutor reiterated the trial court's instruction and stated that the jury needed to focus on the three incidents that occurred in 2017. After both the prosecutor and defense counsel gave their closing arguments, the trial court once again instructed the jury that it could not convict Wheeler simply because he had previously committed breaking and enterings. See *id*. Thus, we conclude that the trial court did not abuse its discretion when admitting the evidence under MRE 404(b).

Furthermore, even if we were to conclude that the trial court abused its discretion in admitting the evidence, Wheeler would not automatically be entitled to a new trial. Rather, "[t]he effect of the error [must first be] evaluated by assessing it in the context of the untainted evidence [in order] to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495. In this case, DP testified in detail about the

breaking and entering incidents that occurred in October 2017 and about Wheeler's actions following the break-ins. DP's testimony was corroborated by evidence that was located at the scenes of the 2017 crimes and by several other witnesses. Furthermore, evidence of Wheeler's conduct after the break-in at Excel supports a consciousness of guilt. Thus, the prosecutor presented overwhelming evidence supporting Wheeler's convictions. In light of this evidence, we conclude that it is not more probable than not that the jury's verdict would have been different without the evidence of the 2009 and 2012 crimes. See *id*.

## B. JOINDER

Wheeler next argues that his right to due process was violated by the trial court's erroneous decision to join the three cases for a single trial. We disagree.

Wheeler failed to raise this issue any time before the trial court, thereby rendering the argument unpreserved. Therefore, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id*. at 763.

MCR 6.120(B) allows trial courts to "join offenses charged in two or more informations . . . against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." Joinder is appropriate when the offenses are "related," i.e., if they are based on "the same conduct or transaction," "a series of connected acts," or "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1). Joinder is also proper when "there is a large area of overlapping proof[.]" *People v Williams*, 483 Mich 226, 237; 769 NW2d 605 (2009) (quotation marks and citation omitted). "Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial." MCR 6.120(B)(2).

In this case, the charges all concerned Wheeler breaking into businesses with DP when the businesses were closed and there was no one present to witness the crimes. In all of the breaking and enterings, Wheeler and DP entered the businesses in order to take money. To further this purpose, Wheeler used tools to enter portions of the buildings that were locked and either took or attempted to open safes that were present on the property. Wheeler used similar strategies to prevent arrest, such as parking far away from the businesses he targeted, entering through the back of the businesses and in some cases cutting the businesses' power and disabling alarm systems. Importantly, all of the crimes occurred in October 2017 and in the same county, and the breaking and enterings at Mr. Burger and Rio Grand occurred within hours of each other.

Although Wheeler argues that joinder of the three cases caused confusion for the jury, we conclude that there was little risk of confusion because the three charges, despite their similarities, were presented distinctly and the facts regarding the three incidents were not complex. Additionally, DP and Detective Sybenga were prevented from having to testify repeatedly, and valuable court resources were conserved, not the least of which was the jury pool. On the day that the prosecutor requested joinder, both parties and the trial court were prepared to join the three separate charges into one trial. In fact, the parties proceeded to voir dire shortly after the trial court held that the charges would be joined, and the next day the parties proceeded to trial.

Wheeler also argues that he was prejudiced "due to the consolidation of his cases and the admission of similar acts evidence" under MRE 404(b). Specifically, Wheeler contends that the jurors convicted him because they concluded that he had the "propensity to commit crime and [the] perception that he was a serial criminal." However, the admittance of other-acts evidence in a case involving joinder does not automatically result in prejudice. As already stated, the trial court properly instructed the jury with respect to the other-acts evidence. Furthermore, the trial court properly instructed the jury that the trial involved "three distinct charges" and that it had to "carefully consider each case and each charge individually." The trial court also instructed the jury that, if it "believe[d] the evidence show[ed] the defendant committed a crime in a particular case, [it] may consider that only for limited purposes with respect to the other cases." Therefore, the trial court's instructions addressed any prejudice that joinder may have caused, and we conclude that joinder did not infringe on Wheeler's right to a fair trial. In sum, we conclude that the trial court did not plainly err when it joined the cases under MCR 6.120(B).

Moreover, we conclude that any error in consolidation would not have affected the outcome of the proceedings given that evidence of each charged offense could have been introduced under MRE 404(b). See e.g., *Sabin (After Remand)*, 463 Mich at 63-65. Additionally, we fail to see how any error resulted in the conviction of an actually innocent defendant or seriously affected the fairness and integrity of the judicial proceedings. See *Carines*, 460 Mich at 763-764. Accordingly, Wheeler has failed to establish plain error requiring reversal.

## C. SENTENCING

Wheeler argues that prior record variable ("PRV") 5, MCL 777.55, was improperly scored. The prosecution concedes error, and we agree that the trial court erred by assessing 15 points for PRV 5. However, because the error does not alter the guidelines range, resentencing is not necessary. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). Nonetheless, this Court must still remand this case to the trial court for the ministerial task of correcting Wheeler's sentencing documentation to reflect a score of zero points for PRV 5. See *People v Harmon*, 248 Mich App 522, 534; 640 NW2d 314 (2001).

## D. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, Wheeler argues that he was denied effective assistance of counsel for two reasons, each of which we will address below. Wheeler failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial, and this Court denied Wheeler's motion to remand for a *Ginther*[1] hearing. Therefore, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

Wheeler first argues that he was denied effective assistance of counsel because defense counsel failed to object to joinder. However, because joinder was proper for the reasons already discussed in Section B of this opinion, any objection from defense counsel would have been futile. It is well settled that failing to "raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 192 (2010).

Next, Wheeler argues that he was denied effective assistance of counsel because defense counsel failed to object to the improper scoring of PRV 5. Although we agree that counsel's performance fell below an objective standard of reasonableness, we conclude that Wheeler cannot establish that the result of the proceeding would have been different but for counsel's error. Specifically, even if defense counsel had objected at the sentencing hearing and the trial court had assigned zero points for PRV 5 instead of 15 points, Wheeler's recommended minimum sentence range would not have changed. In whole, we are not persuaded that the outcome of these proceedings would have been different had Wheeler's counsel raised objections to the scoring of PRV 5.

Wheeler alternatively requests a remand for a *Ginther* hearing. This Court denied Wheeler's earlier motion to remand,[2] and Wheeler has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective. Therefore, we again deny Wheeler's request for a remand for a *Ginther* hearing. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] On November 26, 2019, Wheeler's motion to remand for a *Ginther* hearing was denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Wheeler*, unpublished order of the Court of Appeals, entered November 26, 2019 (Docket No. 347964).

## E. CONCLUSION

We affirm Wheeler's convictions and sentences, but remand for the ministerial task of correcting Wheeler's sentencing documentation as described in this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron