*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERRY JAMES HOSKINS,

        Defendant-Appellant.

FOR PUBLICATION
June 23, 2022
9:30 a.m.

No. 359103
Livingston Circuit Court
LC No. 19-025866-FH

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

GARRETT, J.

In this criminal sexual conduct (CSC) case, Jerry James Hoskins stands charged with two counts of first-degree CSC (CSC-I), MCL 750.520b(1)(a), two counts of second-degree CSC (CSC-II), MCL 750.520c(1)(a), and two counts of accosting a child for immoral purposes, MCL 750.145a. At a forthcoming trial, the prosecution seeks to introduce evidence of prior criminal acts by Hoskins from a 2002 case. In that case, a jury convicted Hoskins of assault with intent to commit CSC, MCL 750.520g(1), and acquitted him of two counts of third-degree CSC (CSC-III), MCL 750.520d. Hoskins moved to exclude evidence of the acts charged in the 2002 case, but the trial court denied the motion. We affirm the trial court's order with respect to evidence of Hoskins's prior CSC conviction, but reverse and remand with respect to evidence of his acquitted charges.

## I. BACKGROUND

### A. CURRENT CHARGES

This case involves allegations that Hoskins sexually abused his stepdaughter, AB, when she was 11 years old or younger. At the preliminary examination, AB testified about several alleged instances of CSC. AB testified that, on one occasion, Hoskins asked her to go downstairs and place her clothes in a dryer. AB did so, and Hoskins allegedly asked AB to pull down her pants and underwear. AB testified that she pulled down her pants and her underwear and that Hoskins touched the outside of her vagina with his fingers. AB did not think that Hoskins placed his fingers inside her vagina. AB testified that Hoskins pulled down his pants, took her hand, and

placed it on his penis. AB testified that she later saw "white stuff" come out of Hoskins's penis and onto the floor.

AB testified that, on another occasion, Hoskins asked her if she wanted him to lick her vagina; AB did not reply, and Hoskins became angry and left. AB testified that, on a different occasion, Hoskins again asked her to pull down her pants and underwear, which she did. Hoskins placed AB on top of a counter, but AB did not remember what happened afterward. AB added that, on still another occasion, Hoskins came into her room, asked her to pull her pants down, which she did, and then placed her on the bed. AB did not remember what happened afterward.

Given the lack of evidence of penetration, the district court bound Hoskins over on charges of CSC-II and accosting a child for an immoral purpose, and it dismissed the charges of CSC-I. However, the circuit court subsequently remanded the case to the district court for a continuation of the preliminary examination. At the continued preliminary examination, another witness, Brendan Wilson Yeomans, testified that, while in jail, he had overheard Hoskins discuss penetrating AB's vagina with his mouth and fingers. In light of this new evidence, and despite Yeomans's credibility issues,[1] the trial court bound Hoskins over on two counts of CSC-I.

## B. INTENT TO INTRODUCE EVIDENCE FROM 2002 CASE

Soon after, the prosecution provided notice of intent to introduce evidence of Hoskins's commission of other listed offenses against minors under MCL 768.27a. Specifically, the prosecution sought to admit testimony from a victim, ED, who was sexually abused by Hoskins in 2002.[2] At a 2002 trial, a jury convicted Hoskins of assault with intent to commit CSC and acquitted him of two counts of CSC-III. According to police reports, ED was 13 years old, and Hoskins was 18 years old, at the time of the incidents that led to Hoskins's trial and conviction. ED and Hoskins were unrelated but had purportedly been in a dating relationship. ED alleged that on one occasion, Hoskins locked her in his bedroom and asked ED to suck his penis. She refused, and Hoskins proceeded to masturbate and ejaculate on her. In a second incident, ED stated that Hoskins took her to the laundry room in his house, placed her on a table, started masturbating, and told her to take her pants off. ED refused, and Hoskins forcefully took off her pants and underwear and engaged in vaginal intercourse without her consent. Hoskins then ejaculated onto her.

---

[1] Yeomans testified that he knew Hoskins and AB's mother (Hoskins's ex-wife) because the mother of Yeomans's children was friends with AB's mother. Yeomans also testified that he saw AB's mother a few months after allegedly overhearing Hoskins's statements in jail, and Yeomans disclosed to AB's mother what he heard.

[2] The notice of intent also included the judgment of sentence for a 2001 conviction by guilty plea to assault with intent to commit CSC involving sexual penetration. Hoskins did not discuss this conviction in his motion to exclude other-acts evidence, and it does not appear that the trial court addressed whether this evidence was admissible when it provided its reasons for denying Hoskins's motion on the record. Accordingly, the admissibility of this 2001 conviction is not properly before us on appeal, and we decline to address it.

Hoskins moved to exclude evidence of these incidents involving ED, arguing that their introduction at trial would be unfairly prejudicial and would outweigh any probative value of the evidence. The trial court disagreed, finding that "the similarity between the two acts as well as the need for the evidence beyond the victim's testimony would outweigh the amount of time passed between the previous conviction and the instant matter." This interlocutory appeal followed by leave granted.[3]

## II. ANALYSIS

### A. STANDARD OF REVIEW

Hoskins argues that the trial court erred by denying his motion to exclude the proposed other-acts evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). Further, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). Likewise, we review the proper interpretation and application of statutes de novo. *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017). De novo review means that "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

### B. CONTROLLING LAW

MCL 768.27a allows evidence of other acts to be admitted in a criminal case involving certain sex offenses:

> (1) Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

---

[3] *People v Hoskins*, unpublished order of the Court of Appeals, entered January 26, 2022 (Docket No. 359103).

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age.

The parties do not dispute that both the 2002 case and the present case involve listed offenses and that AB and ED were both minors.

In *People v Watkins*, 491 Mich 450, 468, 477; 818 NW2d 296 (2012), our Supreme Court held that MCL 768.27a irreconcilably conflicted with, and superseded, MRE 404(b), a rule of evidence requiring the "exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense." By contrast, MCL 768.27a allows for the introduction of certain other-acts evidence "for its bearing on any matter to which it is relevant," which includes evidence of a defendant's propensity to commit a crime. *Watkins*, 491 Mich at 470. Therefore, unlike MRE 404(b), the purpose of MCL 768.27a "is to allow juries to consider evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime." *Id*. at 486.

Further, *Watkins* held that evidence admissible under MCL 768.27a may still be excluded under MRE 403. *Id*. at 481. MRE 403 allows a trial court to exclude relevant[4] evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Given that MCL 768.27a expressly authorizes propensity evidence, courts applying MRE 403 to evidence admissible under MCL 768.27a "must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. "This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial." *Id*. at 487. Our Supreme Court provided an illustrative, nonexhaustive list of considerations that may lead a trial court to exclude evidence under MRE 403:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

When conducting this analysis, trial courts should apply the balancing test of MRE 403 to "each separate piece of evidence offered under MCL 768.27a." *Id*. at 489.

---

[4] Hoskins does not challenge the relevance of the other-acts evidence under MRE 401, and any such challenge would be futile.

## C. APPLICATION OF *WATKINS* AND MRE 403

Hoskins initially argues that the trial court erred by failing to analyze each of the *Watkins* factors on the record and to conduct an MRE 403 analysis. There is no indication from *Watkins* that these factors *must* be discussed on the record. See *Watkins*, 491 Mich at 489 ("The foregoing considerations *may* be used by trial courts to determine whether the probative value of evidence admissible under MCL 768.27a . . . is nonetheless outweighed by the danger of unfair prejudice.") (emphasis added). In fact, our Supreme Court described the *Watkins* factors as "illustrative rather than exhaustive." *Id*. at 488. While the factors are important tools that may "inform a court's decision" to admit or exclude other-acts evidence, they do not supersede the standard plainly provided in MRE 403 itself. *People v Uribe*, 499 Mich 921, 922; 878 NW2d 474 (2016). In any event, the trial court cited *Watkins* on the record, stated that it had considered the *Watkins* factors, and referenced a number of these factors in support of its decision to deny Hoskins's motion. The trial court also cited MRE 403 and discussed its application to evidence admissible under MCL 768.27a. In sum, Hoskins has failed to persuasively show that the trial court's analysis was legally deficient.

Next, Hoskins argues that the trial court abused its discretion by ruling that the probative value of the 2002 other-acts evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. In accordance with our duty to review each piece of evidence offered under MCL 768.27a, we will separately analyze the admissibility of the evidence of Hoskins's 2002 conviction of assault with intent to commit CSC and the evidence underlying Hoskins's acquitted charges for CSC-III. See *Watkins*, 491 Mich at 489.[5]

### 1. 2002 CONVICTION

We begin with Hoskin's 2002 conviction of assault with intent to commit CSC involving sexual penetration. The elements of this crime are (1) an assault, meaning an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of an imminent battery, and (2) an intent to commit CSC involving sexual penetration. *People v Nickens*, 470 Mich 622, 627-628; 685 NW2d 657 (2004). Therefore, the other-acts evidence underlying the 2002 conviction includes ED's proposed testimony that Hoskins asked ED to perform oral sex on him, she refused, and Hoskins ejaculated on her.

Turning to the *Watkins* factors, the first consideration is "the dissimilarity between the other acts and the charged crime." *Watkins*, 491 Mich at 487. Hoskins argues that there is a significant set of differences between the charged crime and the prior acts. Hoskins focuses first on the fact that he and ED were purportedly in a dating relationship, whereas AB is his stepdaughter. We do not find this distinction persuasive. In both circumstances, Hoskins was the adult in a domestic-type relationship with the minor victim. Therefore, we do not agree with Hoskins's contention that these were "significantly different context[s]." Hoskins also emphasizes that the age gap between himself and AB is far greater than it was with ED. In the present case,

---

[5] Because the parties agree that MCL 768.27a properly applies to the proposed other-acts evidence, our analysis focuses only on whether the evidence should have been excluded under MRE 403.

there was approximately a 25-year age gap between Hoskins and AB, whereas the gap was roughly 5 years with the 2002 victim. We find this dissimilarity more pertinent, particularly when combined with the fact that Hoskins was 18 years old at the time of the 2002 offense and in his thirties during the charged crimes. However, the conduct supporting the 2002 conviction and the allegations in the present case also share factual similarities regarding how Hoskins perpetrated the sexual abuse. In both cases, Hoskins's criminal conduct includes allegations that he isolated the minor victim, requested to engage in sexual contact with the victim, and masturbated and ejaculated in front of the victim. Overall, considering that the other-acts evidence underlying the 2002 conviction contains prominent similarities and dissimilarities with the charged crimes, this factor neither cuts for or against admission of the evidence.

Second, we consider "the temporal proximity of the other acts to the charged crime." *Watkins*, 491 Mich at 487. Although MCL 768.27a does not expressly impose a temporal limitation on the admissibility of other-acts evidence, the lack of any such limitation "does not preclude a court from considering under MRE 403 how long ago the other act occurred." *Id*. at 488. Here, the temporal divide weighs in favor of exclusion of the other-acts evidence. The 2002 conviction involved acts occurring in 2002, and the present charges involve acts taking place as recently as 2019.[6] Under MRE 403, evidence of prior acts committed 17 years before many of the charged offenses presents a risk that the jury may give undue weight to the other-acts evidence and overlook reasonable doubts stemming from the evidence presented in support of the current charges. See *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Additionally, while the propensity inference drawn from the 2002 conviction weighs in favor of the evidence's probative value, the strength of the propensity inference is weakened where a very long period of time has passed between the prior acts and the current charges.

In *People v Solloway*, 316 Mich App 174, 195-196; 891 NW2d 255 (2016), we upheld the admission of other-acts evidence under MCL 768.27a that had occurred approximately 12 years before the charged offense. "While the acts occurred some years apart, given how similar the acts are, the temporal divide between their occurrences, standing alone, does not preclude the evidence's admission." *Id*. at 195. Our reasoning in *Solloway* suggests that a lengthy temporal proximity supports exclusion of other-acts evidence where the other acts and the charged crime lack similarities. In this case, some similarities between the 2002 assault with intent to commit CSC and the charged offenses exist, as previously noted, but they are far less stark than in *Solloway*. There, the victims were close in age when the defendant sexually assaulted them, the defendant was related to both of them, and the defendant abused them when each victim was living with him. *Solloway*, 316 Mich App at 194. Additionally, "both the prior act and the charged

---

[6] The amended felony information includes one count of CSC-I and two counts of CSC-II with offense dates of "on or about" May 20, 2019. The information also includes one count of CSC-I and two counts of accosting a child for immoral purposes with offense dates of "on or about 2014-2018." The charges with the 2014-2018 dates involve acts alleged to have occurred at a house in Howell, whereas the 2019 offenses allegedly occurred in Handy Township. 2014 appears to be the year when Hoskins began living with AB and her family, although there was no testimony presented that the prior acts began that far back. Even accepting this timeframe, the temporal gap between the other-acts evidence and the current charges would range from 12 to 17 years.

offense involved defendant entering the victim's bedroom in the middle of the night, climbing on top of [the victim], and engaging in some sort of inappropriate touching." *Id*. at 194-195. The similarities present between the other-acts evidence and the charges in the current case are not factually alike to the extent presented in *Solloway*. Given that the temporal gap between Hoskins's prior acts and the charged offenses is up to five years longer than in *Solloway*, and the similarities between the offenses less evident than in *Solloway*, this factor strongly supports exclusion.

Third, looking at the infrequency of the other acts, ED alleged two instances in which Hoskins asked ED to engage in sexual acts, ED refused, and Hoskins masturbated and ejaculated onto her. Given that this was not a one-time occurrence, we cannot conclude that these other acts occurred so infrequently as to support exclusion of the evidence. See *Solloway*, 316 Mich App at 195.

Fourth, the presence of intervening acts does not support exclusion of the other-acts evidence. Hoskins spent several years in prison following the 2002 conviction and appears to have been released in 2010.[7] To the extent that Hoskins's release from prison is considered an "intervening act," it does not support exclusion, but demonstrates that a period of time passed where Hoskins's ability to sexually abuse minor victims was limited.

Fifth, we consider "the lack of reliability of the evidence supporting the occurrence of the other acts." *Watkins*, 491 Mich at 487. In *Watkins*, 491 Mich at 489, our Supreme Court stated that whether the other act resulted in a conviction was a relevant factor under MRE 403. "That MCL 768.27a *permits* the introduction of other-acts evidence that did not result in a conviction does not mean that evidence that did not result in a conviction *must* be admitted or that a court may not consider whether charges were filed or a conviction rendered when weighing the evidence under MRE 403." *Id*. With respect to the evidence of assault with intent to commit CSC, a jury convicted Hoskins of this offense at his 2002 trial. The fact of this conviction supports a finding that the evidence is reliable. See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) ("[B]ecause there was a conviction, there is no lack of reliability regarding the evidence."). Therefore, we conclude that this factor supports admission.

Finally, we consider "the lack of need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488. In the present case, the evidence supporting the allegations against Hoskins comes primarily from AB's testimony. The prosecution also presented evidence from Yeomans, a witness who, despite having credibility challenges, is expected to provide testimony in support of the CSC-I charges. The trial court found that the need for evidence beyond AB's testimony weighed in favor of admission of the other-acts evidence.

Hoskins argues that AB is fully capable of testifying to her allegations in the present case and that there is no need to supplement her testimony with ED's testimony from the 2002 case. On the one hand, the record from the preliminary examination provides some indication that there

---

[7] A presentence investigation report indicates that Hoskins was discharged from his sentence for the 2002 assault with intent to commit CSC conviction on September 16, 2010.

is a need for additional evidence beyond AB's testimony.[8] AB testified that she was nervous and began crying on the witness stand on at least two occasions. Further, after testifying about two separate incidents where Hoskins asked her to pull down her pants and underwear, she did so, and Hoskins placed her on a surface, AB stated that she did not remember what else happened. This testimony presents three reasonable possibilities: either "the passage of time had faded the victim's memory regarding some details," *Duenaz*, 306 Mich App at 100, AB withheld information because she was nervous to testify in front of her abuser, or AB did not remember any additional information because nothing else occurred. While Yeomans's testimony tends to support AB's allegations, it is reasonable to conclude given his credibility challenges, and the lack of physical evidence and eyewitness testimony, that there is a need for ED's testimony about the 2002 conviction. ED's testimony would support AB's credibility and the truth of her allegations. See *Watkins*, 491 Mich at 492-493 n 92. Therefore, this factor weighs in favor of admission.

In sum, the *Watkins* factors support admission of the evidence of Hoskins's 2002 conviction of assault with intent to commit CSC, although the temporal proximity from the present case weighs in favor of exclusion. Giving due weight to the propensity inference, evidence of Hoskins's 2002 conviction and ED's testimony about the underlying acts would tend to make AB's allegations "more believable by showing propensity to commit the charged offense." See *Duenaz*, 306 Mich App at 101. ED's testimony would also be probative of the issue of Hoskins's intent to commit the sexual assaults in this case. Therefore, the trial court did not abuse its discretion by finding that the probative value of this other-acts evidence was not substantially outweighed by the risk that this evidence would unfairly prejudice Hoskins. We cannot conclude that the trial court's resolution of this close evidentiary question was outside the range of principled outcomes. See *Hine*, 467 Mich at 250. Accordingly, we affirm the trial court's order with respect to the admission of evidence of the 2002 conviction of assault with intent to commit CSC.

## 2. 2002 ACQUITTED ACTS

We turn next to the trial court's decision to admit evidence of the CSC-III charges that Hoskins was acquitted of in 2002. Relevant to this analysis, CSC-III involves "sexual penetration with another person" when the other person is "at least 13 years of age and under 16 years of age," MCL 750.520d(1)(a), or when "[f]orce or coercion is used to accomplish the sexual penetration," MCL 750.520d(1)(b). The 2002 jury acquitted Hoskins of two counts of CSC-III, one for sexual penetration involving a minor between 13 and 15 years old, and another for sexual penetration using force or coercion. The evidence supporting these CSC-III charges stemmed from ED's allegation that Hoskins once forcefully took off her pants and underwear and engaged in vaginal intercourse against her will. Because the evidence supporting each count of CSC-III involves a single incident, we address this other-acts evidence together.

---

[8] In this context, the "need" for additional evidence asks whether the other-acts evidence is important to the prosecution's case, particularly where there is no physical evidence of the crime or the victim's memory has faded. See *Duenaz*, 306 Mich App at 100. However, it remains true that the testimony of a victim in a CSC case can itself be sufficient to obtain a conviction. See MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g.").

First, our analysis of the *Watkins* factors for the acquitted acts mostly mirrors the analysis for the prior conviction. Once again, several factors weigh in favor of admission, while the temporal proximity factor strongly supports exclusion. However, the *Watkins* analysis for the acquitted other-acts evidence contains one prominent difference—the reliability of the evidence. Regarding this factor, we reiterate that a court may consider "whether charges were filed or a conviction rendered when weighing the evidence under MRE 403." *Watkins*, 491 Mich at 489. Here, the trial court did not state on the record whether it considered the fact of the acquittal on the CSC-III charges from the 2002 trial. In any event, this factor favors exclusion of the evidence. Other-acts evidence that resulted in an acquittal is not necessarily *unreliable*. However, it follows that if evidence of Hoskins's assault with intent to commit CSC conviction is reliable, then, at a minimum, evidence of the offenses for which he was acquitted is *less reliable*. See *Duenaz*, 306 Mich App at 101.[9] These reliability concerns present a risk of unfair prejudice that supports exclusion of the acquitted conduct.

The *Watkins* factors are a nonexhaustive guide, and ultimately the balancing standard provided by MRE 403 must govern our review. See *Uribe*, 499 Mich at 922. With further consideration of MRE 403, we conclude that the admission of acquitted conduct here presents a danger of unfair prejudice that substantially outweighs the evidence's probative value. The trial court abused its discretion to the extent that it denied Hoskins's motion to exclude evidence of the CSC-III offense.

As an initial matter, we recognize that evidence of acquitted conduct is not inadmissible as a matter of law when introduced as other-acts evidence in a subsequent trial for a different offense. See *People v Oliphant*, 399 Mich 472, 499; 250 NW2d 443 (1976) (holding that introduction of acquitted conduct as other-acts evidence did not violate double jeopardy). Michigan courts have also allowed the introduction of other-acts evidence involving an acquittal under MRE 404(b). See, e.g., *People v Gibson*, 219 Mich App 530, 533; 557 NW2d 141 (1996); *People v Bolden*, 98 Mich App 452, 458-459; 296 NW2d 613 (1980). And MCL 768.27a does not, by its plain language, preclude the admission of other-acts evidence where the defendant was acquitted of charges involving those acts. See *Watkins*, 491 Mich at 489. In other words, no categorical rule of exclusion or admission applies. Rather, as with other evidence offered under MCL 768.27a, the admissibility of evidence of a prior acquittal depends on the application of MRE 403.

---

[9] We do not go so far as to agree with Hoskins's contention that, by acquitting him on two CSC-III charges, the 2002 jury "determined that the 2002 victim was *not* reliable as to her allegations of sexual penetration." While it may be reasonable to believe that the 2002 jury disbelieved ED's allegations of sexual penetration, we cannot speculate regarding the jury's conclusions underlying its verdict. See *People v Garcia*, 448 Mich 442, 460-461 n 25; 531 NW2d 683 (1995) (opinion by RILEY, J.). All we can confidently discern from the jury's verdict in the 2002 case is the prosecution did not prove beyond a reasonable doubt that Hoskins committed CSC-III. See *People v Oliphant*, 399 Mich 472, 498 n 14; 250 NW2d 443 (1976) (explaining that an acquittal does not necessarily establish the defendant's innocence but only shows that the prosecution failed to prove the charge beyond a reasonable doubt).

Applying MRE 403 to these facts, the trial court's ruling to allow the prosecution to introduce evidence of Hoskins's acquitted acts was an abuse of discretion. The introduction of acquitted conduct under these circumstances presents a particularly unique risk of unfair prejudice, one which substantially outweighs the evidence's probative value. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Blackston*, 481 Mich at 462. This case presents an ideal example where it would be "inequitable" to allow the prosecution to introduce evidence that Hoskins committed CSC-III in 2002 when he was acquitted of that offense.

First, an individual who has been acquitted of a crime enjoys a number of constitutional protections that impact our calculus of unfair prejudice under MRE 403. Due process guarantees that such an individual is presumed innocent as to any acquitted conduct. See *Beck*, 504 Mich at 620-621. Due process also prohibits a court from subjecting a defendant to an increased sentence based on acquitted conduct. *Id*. at 629. Nor may a defendant ever be retried for the acquitted offense. *People v Szalma*, 487 Mich 708, 717; 790 NW2d 662 (2010). Consequently, unlike other-acts evidence of a conviction, where a jury has already found the defendant guilty beyond a reasonable doubt, or evidence of uncharged acts, where a fact-finder has made no determination, evidence of an acquittal introduced at a subsequent trial raises significant fairness concerns. A jury considering other-acts evidence of acquitted conduct will make its own independent determination of whether the defendant committed the acquitted acts, despite a previous jury's unanimous verdict finding that defendant not guilty.

Second, other-acts evidence of acquitted conduct is unfairly prejudicial because the accused must again defend against allegations of which he has already been acquitted. See *Dowling v United States*, 493 US 342, 362; 110 S Ct 668; 107 L Ed 2d 708 (1990) (BRENNAN, J., dissenting) (" . . . [I]ntroduction of this type of evidence requires the defendant to mount a second defense to an offense for which he has been acquitted."). Not only is defending against a 20-year-old acquittal more difficult, but placing this burden on Hoskins risks prejudicing his ability to present a full and adequate defense against the charges that he currently faces. Hoskins will be unfairly required to "spend time and money relitigating matters considered at the first trial." See *Dowling*, 493 US at 352.[10] Requiring Hoskins to defend against this decades-old acquittal from a case involving a different victim is an inequitable outcome that MRE 403 is designed to prevent.

Perhaps most importantly, the introduction of other-acts evidence also presents the danger that a jury will convict the defendant solely because it believes he committed other criminal conduct, a possibility that is particularly egregious when the defendant has been *acquitted* of these other acts.[11] "Whenever a defendant is forced to relitigate the facts underlying a prior offense for which he has been acquitted, there is a risk that the jury erroneously will decide that he is guilty of that offense." *Dowling*, 493 US at 361 (BRENNAN, J., dissenting). As a result, "the fact that the

---

[10] Although these concerns also apply to evidence of the 2002 conviction, the unfair prejudice in that circumstance is lessened because the defendant is no longer presumed innocent of that crime.

[11] While a limiting instruction is a tool in the trial court's arsenal to prevent the jury from misusing other-acts evidence, see *Watkins*, 491 Mich at 490, we believe that the risk of unfair prejudice from admission of this acquitted conduct is too great for any instruction to mitigate its effect.

-10-

defendant is forced to relitigate his participation in a prior criminal offense under a low standard of proof combined with the inherently prejudicial nature of such evidence increases the risk that the jury erroneously will convict the defendant of the presently charged offense." *Id*. at 362 (BRENNAN, J., dissenting). The danger of unfair prejudice is plain when a jury is allowed to consider evidence that resulted in an acquittal to convict the defendant of a separate offense. Here, when that evidence is overly prejudicial—in that it substantially outweighs the evidence's probative value—exclusion must follow.

In sum, although the evidence of this acquitted conduct has some probative value— particularly to demonstrate Hoskins's propensity to commit the charged offenses—the danger of unfair prejudice from admitting this acquitted conduct is extremely high. Introducing this evidence would be inequitable because Hoskins is constitutionally protected from further criminal liability on the acquitted charges, but would have to defend against them in this case. It would also unfairly prejudice Hoskins by burdening his defense with the relitigation of facts which already resulted in an acquittal, and by presenting an unacceptable risk that Hoskins will be erroneously convicted by a jury's misuse of the other-acts evidence. When combined with the lengthy temporal proximity and reliability concerns illustrated by the *Watkins* factors, the risk of unfair prejudice from admission of these acquitted acts substantially outweighs the evidence's probative value. The trial court abused its discretion by concluding otherwise.

## III.  CONCLUSION

The trial court did not err by denying Hoskins's motion to exclude as to evidence of his 2002 conviction of assault with intent to commit CSC. However, the trial court abused its discretion by denying the motion to exclude as to evidence of Hoskins's acquitted conduct from the 2002 trial. If this matter proceeds to trial, the prosecution may admit evidence supporting the 2002 conviction, but may not introduce the evidence of sexual penetration relating to the acquitted CSC-III charges. We trust that the trial court will act faithfully and judiciously to ensure that the other-acts evidence is properly admitted and excluded in accordance with our decision. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer

-11-