*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DRAMITRIUS DONELL MONROE,

Defendant-Appellant.

UNPUBLISHED
October 10, 2024
12:34 PM

No. 363037
Kent Circuit Court
LC No. 21-001143-FH

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

After a three-day trial, a jury acquitted defendant, Dramitrius Donell Monroe, of assault with intent to do great bodily harm less than murder or by strangulation, MCL 750.84, but convicted defendant of domestic assault, second offense, MCL 750.81(4). The trial court sentenced defendant to 365 days' incarceration. On appeal, defendant asserts that his right to a speedy trial was violated, raises several claims of ineffective assistance of counsel, and contends that the trial court erred by admitting into evidence photographs that lacked a sufficient foundation and were unduly prejudicial. For the reasons explained herein, we affirm defendant's conviction.

## I. FACTUAL BACKGROUND

The charges against defendant arose from his assault of the victim on May 10, 2020. According to the victim's testimony at defendant's trial, at some point during that evening, defendant became agitated when the victim received a notification on her phone that someone— who turned out to be a man—"liked" her picture on Facebook. Despite reassurances from the victim, defendant told the victim that things were not working out between them and that she had disrespected him, played games with him, and tricked him. According to the victim, who was on the bed, defendant then physically assaulted her, hitting and choking her. When the victim scraped defendant on the back with her fingernails as hard as she could, he released her, and she rolled off the bed and lay on the floor in the dark.

While still in fear of defendant, the victim agreed not to tell anyone what defendant had done. However, the victim went to the hospital nearly two weeks later because she was coughing up blood. According to the victim, her body was still bruised from the May 10 incident, and when

-1-

healthcare providers asked her about the bruises, she said that she got "in a tussle," but she did not say with whom. The physician's assistant who examined the victim that day testified that the victim did not appear to be in any distress during the exam and that the exam was unremarkable for evidence of ruptured blood vessels, swelling, or any signs of trauma. He further testified that the victim did not mention having neck pain, a sore throat, or any trouble swallowing, and he did not observe any bruising. He acknowledged, however, that there could be bruising of the musculature without any visible signs. The victim testified that, under the urging of the healthcare providers, and with the support of a community social worker, she reported the incident to law enforcement that same day. Defendant was arrested in June 2020 on a parole violation and later charged with the crimes in this case.

In March 2022, defendant moved the trial court to dismiss the charges arising from the assault with prejudice on the basis that his right to a speedy trial had been violated. The trial court denied the motion. Two months later, at defendant's trial, the prosecution introduced into evidence 22 screenshots of text messages between defendant and the victim, which the victim had provided to police. The prosecution also introduced into evidence eight photographs, six of which the victim said that she took the day after the assault and were purported to show the injuries that resulted from the assault. Defense counsel objected to the text messages and the photographs on the basis that they were undated and, therefore, lacked independent verification. The victim testified that the text messages fairly and accurately represented text conversations between her and defendant, and that the photographs fairly and accurately represented her injuries on the day that the photographs were taken. The trial court admitted all the text messages and photographs into evidence.

The prosecution, through defendant's sister, also admitted into evidence, without objection, a portion of a recorded phone call that defendant made to his sister from jail a week before the trial started. During their conversation, defendant said that, if the prosecution offered it, then he would take a year incarceration "for scaring the bitch."

As already indicated, the jury acquitted defendant of assault by strangulation but convicted him of domestic assault, second offense. Defendant now appeals.

## II. SPEEDY-TRIAL VIOLATION

Defendant first contends that the trial court erred by denying his motion for dismissal of the charges against him on the basis of a speedy-trial violation. We disagree.

Whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). We review a trial court's factual findings for clear error; the constitutional issue is a question of law that we review de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006); *Waclawski*, 286 Mich App at 664. In addition, this Court must determine whether any error was harmless beyond a reasonable doubt. *Waclawski*, 286 Mich App at 664. Violation of the constitutional right to a speedy trial requires dismissal of the charge with prejudice. *Id*. at 664-665. See also MCR 6.004(A).

The right to a speedy trial is guaranteed to criminal defendants by the federal and Michigan constitutions, as well as by statute and court rule. US Const, Am VI; Const 1963, art 1, § 20;

MCL 768.1; MCR 6.004(A). The time for evaluating a defendant's speedy-trial claim "runs from the date of the defendant's arrest . . . ." *Waclawski*, 286 Mich App at 665. Prejudice is presumed after a delay of 18 months, and the burden shifts to the prosecution to show that there was no injury. *People v Collins*, 388 Mich 680, 695; 22 NW2d 769 (1972). A "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich at 262 (quotation marks and citation omitted). To determine whether an accused's right to a speedy trial has been violated, this Court must consider the following *Barker*[1] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013) (quotation marks and citation omitted).

The first factor is the length of delay. Both parties agreed in the trial court that the length of delay between defendant's arrest on the charged crimes and his motion for dismissal was 21 months. See *Williams*, 475 Mich at 261. Two additional months passed before defendant's trial began. This 23-month delay was presumptively prejudicial, see *Collins*, 388 Mich at 695, and "the burden is on the prosecution to rebut the presumption," *Waclawski*, 286 Mich App at 665.

The second factor is the reason for delay. The trial court identified the reasons for delay as: (1) plea negotiations in June 2021; (2) the withdrawal of defendant's court-appointed counsel and the appointment of new counsel in November 2021; (3) adjournments because of the COVID-19 pandemic; and (4) the suspension of jury trials from January 17, 2022 to March 7, 2022, because of the COVID-19 pandemic.

Ongoing plea negotiations are inherent in the court system. Although delays inherent in the court system are attributable to the prosecution, "they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993). The withdrawal of counsel is a delay over which the prosecution has no control. *Collins*, 388 Mich at 691. Lastly, this Court has recently held that "delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5.

In the present case, none of the reasons for the delay in bringing defendant to trial weighed heavily against the prosecution. Any delay caused by the plea negotiations that took place in June was technically attributable to the prosecution but carried minimal weight in the speedy-trial analysis. See *Wickham*, 200 Mich App at 111. Defendant's initial attorney withdrew in late November, and the next proceeding took place in late December. Therefore, it appears that approximately one month of the delay could be attributed to defendant. See *Collins*, 388 Mich at 691. The trial court noted that the court was shut down from January 2022 until near the end of March 2022 because of COVID-19. This delay is not attributable to the prosecution. See *Smith*, ___ Mich App at ___; slip op at 5.

---

[1] These factors were identified in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), and first applied by the Michigan Supreme Court in *Collins*, 388 Mich at 688-695.

Plea negotiations, the withdrawal of defense counsel, and court shutdowns account for approximately 5 months of the 23-month delay, with only 1 month being clearly attributable to defendant. The trial court found that the remaining delay was attributed generally to COVID-19. It is undisputed that docket congestion increased exponentially as a result of COVID-19, and the fact that the Kent Circuit Court suspended trials from January to March 2022 indicates that the impact of the pandemic lingered. Therefore, the reasons for delay do not, as a whole, support defendant's speedy-trial claim.

The third factor is defendant's assertion of his right to a speedy trial. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v Wingo*, 407 US 514, 532; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Defendant asserted his right to a speedy trial, but not until he filed his motion for dismissal in March 2022, which was 21 months after his June 2020 arrest, and only 2 months before trial. Therefore, "this factor weighs only the slightest in defendant's favor." *Waclawski*, 286 Mich App at 668.

The final factor is prejudice. A defendant may experience two types of prejudice: "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264. "Pretrial incarceration necessarily 'results in a degree of prejudice to the person.' " *Smith*, ___ Mich App at ___; slip op at 6, quoting *Collins*, 388 Mich at 694. "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264 (quotation marks and citations omitted). Prejudice to the defense includes the loss of witnesses and the "[l]oss of memories caused by the passage of time." *Smith*, ___ Mich App at ___; slip op at 6. "[I]n considering prejudice, a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *Id.*

Defendant asserted in the trial court that the delay in bringing his case to trial resulted in the loss of income, and he asserts on appeal that he was personally prejudiced because he did not receive any jail credit for the time he spent incarcerated and because he suffered nearly two years of anxiety and concern. Even if defendant suffered considerable personal deprivation by his 23-month incarceration, the Michigan Supreme Court has held that "the prejudice prong of the *Barker* test may properly weigh against a defendant incarcerated for an even longer period of time if his defense is not prejudiced by the delay." *Williams*, 475 Mich at 264, citing *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973) (finding no prejudice for 27 months' incarceration because there was "no testimony relevant to prejudice to defendant's defense because of the length of the case such as loss of witnesses, etc."). See also *Smith*, ___ Mich App at ___; slip op at 7-8 (citing *Chism* for the same proposition). Although "anxiety caused by a lengthy delay can occur, anxiety alone cannot establish a speedy-trial violation." *Id.* at ___; slip op at 6. Moreover, any loss of income that defendant suffered was not simply the result of the delay in this case, but was also attributable to defendant's reincarceration on a parole violation.

As to prejudice to his defense, defendant argued in the trial court that the delay in bringing his case to trial resulted in the loss of witnesses. This claim is without merit. The only witnesses to the May 10 incident at were the victim and defendant, and both were available at trial. In addition, defendant's theory of the case—that "credibility [was] key" and that the victim was not credible—did not call for additional witnesses. Given that the witnesses to the charged crimes were available for trial and that the defense's theory rested on the victim's lack of credibility, it

-4-

cannot be said that defendant's ability to adequately prepare his defense was prejudiced by the loss of witnesses occasioned by the delay.

Defendant also argues on appeal that he suffered prejudice to his defense because his incarceration prevented him from accessing his cell phone and providing his attorney with complete text-message threads to provide context for the selected text messages that the prosecution admitted at trial. However, it is not clear that defendant's incarceration prevented defendant's attorney from obtaining defendant's cell phone or his cell phone records. In addition, to the extent that the jury credited testimony that was supported by photographic evidence, it seems highly unlikely that the defense would have been aided by additional text-message evidence. Moreover, in support of the credibility theory of defense, defense counsel was able to impeach the victim's credibility with examples from her preliminary examination testimony that conflicted with her trial testimony. On this record, it cannot be said that the delay between defendant's arrest and his trial prejudiced his ability to defend against the charges. See *id*.

In conclusion, although a 23-month delay is presumably prejudicial, the trial court did not err by rejecting defendant's argument that he was denied his right to a speedy trial. The trial court's factual findings regarding the reasons for delay were not clearly erroneous, defendant did not assert his right to a speedy trial until two months before his trial, and the prosecution overcame the presumption of prejudice by showing that defendant's defense was not hindered by the delay in commencing trial. Accordingly, the trial court properly declined to dismiss the charges against defendant.

III. PHOTOGRAPHIC EVIDENCE

Defendant next contends that the trial court erred by admitting into evidence photographs that lacked a proper foundation and were unduly prejudicial. Defendant's claim of error is without merit.

This Court reviews for an abuse of discretion a trial court's decision regarding the admission of evidence. See *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). A trial court might abuse its discretion when its decision arises from an incorrect legal framework, see *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002), and a trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law, see *Gursky*, 486 Mich at 606. This Court reviews de novo whether the trial court properly applied the law. See *id*.

Because defendant did not object to the photographs on the basis that they were unduly prejudicial, this issue is not preserved and is reviewed under the plain-error standard. See *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). To prevail under plain-error review, defendants must establish that error occurred, that the error was obvious, and that it affected their substantial rights. *Id*. at 763. An error affected substantial rights if it "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and alteration omitted).

When authentication or identification is a condition precedent to the admissibility of evidence, this requirement may be satisfied by testimony from a witness with knowledge that an item is what it is claimed to be. MRE 901(b)(1). Photographic evidence is admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403, and such evidence may be admitted to corroborate a witness's testimony. *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018).

The victim testified that, except for the photographs entered as 2D and 2F, she took the photographs entered into evidence as 2A through 2H on May 11, the day after the assault. She took photographs 2D and 2F on May 21 and May 20, respectively. The victim further testified that the photographs were fair and accurate representations of how her injuries looked on the day that she took the photographs. The trial court found that the victim's testimony provided a proper foundation for admission of the photographs, and defendant does not directly challenge this ruling. Instead, defendant argues that, although the photographs taken on May 11 "would be more relevant to proof of an assault" than the photographs taken in the hospital on May 21, none of the photographs could be accepted as representing the bruises resulting from defendant's alleged assault of the victim because the healthcare providers who examined the victim testified that she did not have any visible bruising. This argument is without merit.

Evidence that is authenticated under MRE 901(a) may be submitted to the jury; MRE 901(b) provides some examples of how the requirement of MRE 901 may be satisfied, including through "[t]estimony that an item is what it is claimed to be." MRE 901(b)(1). As already indicated, the trial court found that the victim's testimony was sufficient to authenticate the photographs as being what they were claimed to be, and defendant has not seriously challenged this ruling. Therefore, the photographs could be submitted to the jury. To the extent that the testimonies of the healthcare providers were at odds with the photographs, it was the jury's role to decide "whether the [photographic] evidence is reliable and what weight to give the evidence, if any." *People v Smith*, 336 Mich App 79, 107; 969 NW2d 548 (2021).

Defendant also argues that the trial court erred by admitting the photographs because they had a "powerfully evocative and emotional impact" on the jury. This argument is also without merit. Photographs intended merely to arouse the passions of the jury should not be admitted. *Brown*, 326 Mich App at 193. "However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime." *Id*. (quotation marks and citation omitted). The photographs at issue in the present case were properly offered to corroborate the victim's testimony about defendant's assault. See *id*. at 192. Defendant's argument that the photographs were of the type to have a "powerfully evocative and emotional impact" on the jury is unsupported by review of the photographs. Further, the jury's acquittal of defendant on the charge of assault by strangulation strongly suggests that the forcefulness of the photographs did not so inflame the jury's passion as to override its ability to arrive at a reasoned verdict on the basis of the evidence presented. In short, there is no record support for defendant's assertion that the photographs were inadmissible because they were unduly prejudicial. For these reasons, we conclude that the trial court did not abuse its discretion by admitting the photographs into evidence.

## IV. PROTECTIVE ORDER

Defendant also contends that the trial court erred by entering a protective order that denied him access to digital evidence, thereby preventing him from adequately preparing for trial. Defendant's claim of error is without merit.

Defendant did not object to the protective order in the trial court; therefore, this issue is not preserved, and our review is for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 764.

The language of the protective order does not support defendant's assertion that the order prohibited him from viewing digital discovery. The order made digital evidence available to defense counsel and to "others necessary to the defense." To the extent that defendant was "necessary to the defense," the order did not prohibit his access to the digital evidence, regardless of whether it contained personally identifiable information. The order allowed both parties to obtain whatever digital discovery was relevant, without restriction, and it protected both parties from the unnecessary dissemination of their personally identifiable information. Because the order did not restrict the type of digital evidence that could be obtained through discovery, and because it allowed the evidence to be available to defense counsel and to "others necessary for the defense," there were no grounds for defense counsel to challenge the order on the basis that it was overbroad. For the same reasons, defendant has not established the necessity for a *Ginther*[2] hearing on defense counsel's decision not to challenge the order.

Defendant complains that he did not get to see the evidence personally. As already indicated, the evidence was available to defense counsel and to others necessary to the defense; therefore, if defendant did not personally see the evidence before trial, it was not because of anything that the trial court or the prosecution did. Defendant does not claim that defense counsel rendered ineffective assistance by not showing him the digital evidence. Assuming for the sake of argument that defense counsel should have shown defendant the digital evidence that the prosecution intended to admit at trial, that counsel failed to show the evidence to defendant, and that counsel's failure constituted deficient performance, defendant has not established prejudice.

Defendant asserts that, had he seen the photographic evidence before trial, he would have been able to identify problems with the photographs and provide reasons for defense counsel to file a motion in limine to exclude the photographs from trial. But, defendant does not identify any "problems" with the photographs that defense counsel did not identify at trial. Defense counsel objected to admitting the photographs into evidence because they lacked independent verification of when the photographs were actually taken. In support of the defense theory that credibility was "the key to this case," and that the victim was not credible, defense counsel argued to the jury that neither the photographs nor the physical examinations of the victim supported her allegations of strangulation, and he reiterated that the photographs were unreliable, that they showed only minor bruises, and that two photographs that were purportedly taken on the same date showed the victim wearing different clothes. The jury's acquittal of defendant on the charge of assault by

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

strangulation arguably demonstrated the effectiveness of defense counsel's strategy with respect to the photographic evidence.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Defendant raises claims of ineffective assistance of counsel arising from defense counsel's failure to object to admission of a recorded jail call and to a text message referring to defendant's previous incarceration.

Because these claims come to us unpreserved, "this Court's review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (quotation marks and citation omitted). Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

The prosecution introduced through defendant's sister a portion of a phone call that defendant made to his sister from jail on May 19, 2022. In the portion admitted into evidence, defendant said that, if the prosecution offered it to him, then he would accept a year's incarceration "for scaring the bitch." Defendant did not object in the trial court to admission of the phone call. On appeal, defendant asserts that defense counsel rendered ineffective assistance by failing to object to admission of the evidence under MRE 401 (relevance) and MRE 403 (probative value substantially outweighed by unfair prejudice). Defendant's argument is without merit.

Defendant's statement during the phone call was relevant. Evidence is relevant if it has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[3] Defendant was charged with assault by strangulation and domestic assault, second offense, arising from defendant's abuse of the victim on May 10, 2020, and the defense theory was that the victim was utterly lacking in credibility. Defendant's statement that he would take a year of incarceration for "scaring the bitch" appeared to support the victim's testimony regarding defendant's actions; the phone call made the fact of defendant's abuse of the victim more probable than it would have been without the phone call. Therefore, the portion of the phone call played for the jury was relevant under MRE 401.

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of defendant's 2022 trial.

Defendant argues that, even if the phone call was relevant, its admission should have been barred by MRE 403. Under MRE 403, relevant evidence may be barred if its probative value is "substantially outweighed by the danger of unfair prejudice," among other reasons. All evidence against a criminal defendant is prejudicial to some extent, "otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Unfair prejudice may exist when there is a danger that the jury will give marginally probative evidence undue or preemptive weight, or when it would be inequitable to allow use of the evidence. *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995).

Defendant's statement during the phone call was more than marginally probative. The defense theory was that the victim was not credible, and hearing defendant indicate that his actions during the incident were such as to scare the victim was more than marginally probative of the victim's credibility and of defendant's assaultive conduct. Even if defendant's statement had been marginally probative, the jury's acquittal of defendant on the charge of assault by strangulation and its conviction of defendant on the charge of domestic assault, second offense, indicated that the jury did not give defendant's statement undue or preemptive weight. See *id*. The verdict suggested that the jury assessed the victim's testimony and the physical evidence together. The jury believed the victim's testimony and the corroborating evidence regarding domestic assault, but the jury disbelieved the victim's testimony regarding assault by strangulation, presumably because of the absence of corroborating evidence. Given that the phone-call evidence was admissible under MRE 401 and MRE 403, any objection to the evidence on these grounds would have been futile, and defense counsel is not ineffective for failing to raise a futile objection. See *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010).

Next, defendant asserts that defense counsel was ineffective for failing to object to the introduction of a text message in which defendant stated that he has spent most of his life "locked up." Defendant contends that defense counsel's deficient performance was highly prejudicial because it presented defendant to the jury as a dangerous criminal. This contention is belied by the jury's verdict. The jury's acquittal of defendant of assault by strangulation suggests that, instead of concluding that defendant was a bad man who did bad things, the jury carefully considered the evidence and reached its own conclusion that defendant did not commit the acquitted offense. In addition, the testimonies of the victim, the deputy sheriff to whom the victim reported the assault, and the victim's primary care physician, if believed, along with photographic evidence corroborating the victim's testimony, were sufficient to support the jury's domestic-assault verdict. In light of the evidence presented and of the jury's verdict, defendant has not shown that, but for defense counsel's failure to object to a text message in which defendant said that he had been "locked up," there exists a reasonable probability that the outcome of the trial would have been different. Given the facts of this case, an isolated reference to defendant's incarceration is insufficient to undermine confidence in the jury's verdict. See *Chenault*, 495 Mich at 150.

Prevailing on a claim of ineffective assistance of counsel requires that a defendant establish both deficient performance and prejudice. *Trakhtenberg*, 493 Mich at 51. Defendant having failed to establish both prongs with respect to either of his claims, defendant's claims of ineffective assistance must fail. See *id*.

## VI. CONCLUSION

The trial court did not err by denying defendant's motion for dismissal on the basis of a speedy-trial violation because, although the delay was presumptively prejudicial, most of the delay was not attributable to the prosecution or, if attributed to the prosecution, given only minimal weight, and there is no evidence that the delay prejudiced defendant's ability to prepare for trial and to defend the charges against him. Further, the trial court did not abuse its discretion by admitting the challenged photographs into evidence. They were authenticated, their admission did not unduly prejudice defendant, and it was the jury's role to determine what weight to give the photographs in their deliberations. Moreover, contrary to defendant's contention, the trial court's protective order did not prohibit him from reviewing digital evidence if such was necessary to the defense, and it would have been futile for defense counsel to challenge the order on the basis that it was overbroad. Lastly, defendant failed to establish that defense counsel performed deficiently by failing to object to admission of the challenged phone call and that he was prejudiced by defense counsel's failure to object to a statement regarding defendant's previous incarceration. Therefore, defendant has not established either of his claims of ineffective assistance of counsel.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney

-10-